**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Fred Anthony HAMILTON,
Defendant-Appellant.**

**No. 81–1430X.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 9, 1982.

Decided June 21, 1983.

Poole, J., filed dissenting opinion.

William Landers, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Gregory Parkin, Costa Mesa, Cal., for defendant-appellant.

Before KENNEDY, POOLE, and REINHARDT, Circuit Judges.

KENNEDY, Circuit Judge:

Appellant, Fred Anthony Hamilton, appeals from an order of the district court revoking his probation and reinstating his suspended five year sentence. We vacate the order and instruct the district court to reimpose the unfinished portion of Hamilton's probation including the twenty-two days of confinement he has yet to serve.

On September 21, 1976, Hamilton pleaded guilty to a charge of conspiracy to possess and sell checks stolen from a bank. On October 18, 1976, he was sentenced to a five year term, with the sentence suspended on the condition he complete five years probation and spend 120 days in a jail-type setting. The court ruled that the 120 days could be served on consecutive weekends beginning October 23, 1976.

Hamilton completed forty-nine of the sixty weekends. Thereafter he did not report to jail. There is no evidence in the record that he was ever admonished for not com-

pleting his jail term. Indeed, the record below suggests that Hamilton's probation officer did not consider his default to be a notable or serious breach of his probation conditions.

Despite his probation officer's laxity, Hamilton on his own initiative informed the court of his default on June 22, 1978, and petitioned to reschedule the remaining eleven weekends of his sentence. The district court was again apprised of defendant's failure to finish his jail term on August 23, 1978, when Hamilton petitioned the court for partial exoneration of his bond. Despite being twice informed of Hamilton's breach, however, the district court took no action to reschedule the remaining weekends or to revoke Hamilton's probation. The probation officer likewise took no action.

Apart from his failure to spend sixty consecutive weekends in jail, Hamilton successfully completed over four years of his five year probation. During that period, Hamilton was apparently accorded substantial leeway by his probation officer. The record below indicates that the two men did not meet regularly, although the probation officer had contact with Hamilton whenever he wished. The record also suggests that Hamilton reported his whereabouts and activities on an informal basis, and that such a course of affairs was acceptable to the probation officer.

In the fifth year of probation, on May 1, 1981, Hamilton was assigned a new probation officer, Makagon. On May 7, 1981, Makagon mailed Hamilton instructions to meet with him on May 14, 1981, and to appear before the district court on May 18, 1981. Hamilton did not appear on either date, and on May 20, 1981, the district court issued a bench warrant for his arrest. On July 13, 1981, a probation revocation hearing was held, at which Hamilton was charged with the following probation violations: (1) failure to complete 120 days in a jail-type institution; (2) failure to report to his probation officer on May 14, 1981; (3) failure to appear before the court on January 14 and May 18, 1981; and (4) failure to work at a lawful occupation.

Hamilton conceded his failure to complete the jail term. As to his failures to appear on May 14 and May 18, 1981, he claimed he did not receive notice until after those dates had passed. He testified that he had received the instructions late because he was living at a different address, that he had advised his former probation officer of the move, and that the officer was satisfied with the report and did not request a specific address. The government did not rebut this testimony. Hamilton further asserted that he did come to court on January 14, 1981, but that the courtroom was closed. His probation officer allegedly told him the judge was in Arizona. Finally, as to his employment status, Hamilton introduced substantial, corroborated, and uncontradicted testimony that he was gainfully involved in personal business affairs during the time the Government asserts he was unemployed.

Appellant contends the district court abused its discretion by revoking his probation on the four grounds listed above. We agree.

■■■ The district court has broad discretion to revoke probation if its conditions are violated. *Higdon v. United States,* 627 F.2d 893, 900 (9th Cir.1980). Indeed, reporting violations alone may justify revocation. *Id.; United States v. Lara,* 472 F.2d 128, 129 (9th Cir.1972). The district court's discretion does, however, have limitations, and we have authority to review revocation decisions for fundamental unfairness or for an abuse of discretion. *United States v. Dane,* 570 F.2d 840, 843 & n. 4 (9th Cir. 1977), *cert. denied,* 436 U.S. 959, 98 S.Ct. 3075, 57 L.Ed.2d 1124 (1978).

■■■ The district court had notice at least three years prior to the revocation hearing that Hamilton had not completed twenty-two days of his scheduled 120 day jail term. Yet despite Hamilton's petition to reschedule the remaining portion of the sentence, the district court took no action, either to rebuke the petitioner or to reschedule his term. The probation officer

likewise took no action. In light of appellant's efforts to bring the matter to the court's attention, the petitioner's default with respect to the jail sentence can no longer be considered a valid basis for revoking his probation. Revocation of probation after unreasonable delay or under circumstances inherently misleading to the probationer is an abuse of discretion. *See United States v. Tyler,* 605 F.2d 851, 853 (5th Cir. 1979); *Greene v. Michigan Department of Corrections,* 315 F.2d 546, 547 (6th Cir.1963).

■ We do not hold that under appropriate circumstances a probation officer or district court may not wait to assess the cumulative effect of several violations before initiating a revocation proceeding. *See, e.g., Morrissey v. Brewer,* 408 U.S. 471, 479–80, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484; *United States v. Johnson,* 415 F.2d 1130 (9th Cir.1969). We also do not suggest that revocation proceedings should be an automatic reaction to technical or minor violations simply to preserve the government's position. *See United States v. Tyler,* 605 F.2d at 853; *United States v. Reed,* 573 F.2d 1020, 1024 (8th Cir.1978). At some point, however, violations of which the district court has been apprised and upon which the probationer has sought corrective action become stale or are waived as a basis for revoking probation. *See United States v. Tyler,* 605 F.2d at 853; *Greene v. Michigan Department of Corrections,* 315 F.2d at 547. Three years is beyond that point under the circumstances of this case.

■ The district court also found that Hamilton violated his probation by failing to keep scheduled appointments and to make timely written reports of his whereabouts and employment. Revocation was based in part on those grounds. As to those violations, we find that Hamilton was misled or did not receive adequate notice as to the true nature of his obligations, and that to revoke his probation on those grounds was an abuse of discretion. It is apparent from the record that the obligations imposed upon Hamilton by his first probation officer were far from rigorous. Not only did that officer overlook appellant's failure

to complete eleven weekends of incarceration, he also apparently condoned the substitution of general oral reports made at irregular intervals for timely written progress reports, contacted Hamilton infrequently, and allowed him to live temporarily in Newport Beach without specifying an exact address. Despite the informality of their relation, the officer was apparently satisfied with Hamilton's conduct, and during his more than four years of probation under the officer's tutelage there is nothing in the record to indicate that Hamilton engaged in any sort of antisocial or opprobrious conduct for which probation should be revoked. *See United States v. Rodgers,* 588 F.2d 651, 653 (9th Cir.1978); *Morrissey v. Brewer,* 408 U.S. at 479, 92 S.Ct. at 2599 (probation should be revoked only when the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity).

■ Makagon, Hamilton's second probation officer, apparently expected Hamilton to conform to a far more rigid reporting regimen. The second officer would have been entitled to impose stricter standards on the probationer after proper notice. The probationer in the instant case, however, could not be expected to know Makagon's standards and preferences in the absence of such notice, particularly in light of the widely divergent supervisory styles illustrated by the record below. The probationary system imposes upon its officers a duty to represent the interests of both society and the probationer. *United States v. Tyler,* 605 F.2d at 853. Neither interest is served by a penalty for failure to anticipate and respond to the vastly disparate expectations of various probation officers assigned to the case.

The interests of fairness require some level of consistency in the supervision of a probationer. If a newly assigned probation officer intends to enforce probation conditions more stringently than his predecessor, the probationer must ·be advised of that policy before its violation can become the basis for revocation.

We also reverse as to the finding that Hamilton was not lawfully employed. Hamilton testified below that during the period in question he repossessed cars for Crocker Bank to satisfy an existing business debt and operated a recently purchased furniture business. Two witnesses corroborated the testimony.

The Government did not rebut the evidence of Hamilton's business activities, but instead contends they were not gainful. We cannot accept the argument. Unless the probation conditions provide otherwise, activities related to either winding up or starting a legitimate business are as much an acceptable occupation for a probationer as they are for an ordinary citizen. That such activities may not occur during a profit making phase of the business cycle does not make them illegitimate.

We find that the district court exceeded its discretion in entering the order below. We vacate the district court's order and instruct it on remand to reinstate Hamilton's probation, including the twenty-two days of incarceration he has yet to serve. Hamilton shall be given credit for any jail time he has served pursuant to the revocation of his probation. The court may impose other appropriate conditions on the balance of the probation term.

VACATED and REMANDED.

POOLE, Circuit Judge, dissenting:

I respectfully dissent.

The only issue on this appeal is whether the district court abused the broad discretion granted it in determining that the appellant's probation should be revoked for violations of the terms of that probation, *United States v. Diaz-Burgos,* 601 F.2d 983, 985 (9th Cir.1980), and I do not believe he did so.

Within certain broad limits, there is no doubt that the sentencing court's exercise of discretion whether to revoke probation can be overturned only for an abuse of discretion. *Burns v. United States,* 287 U.S. 216, 221–23, 53 S.Ct. 154, 156, 77 L.Ed. 266 (1932); *United States v. McLeod,* 608 F.2d 1076, 1079 (9th Cir.1979); *United States v. Dane,* 570 F.2d 840, 843 (9th Cir. 1977).

The record does not warrant the majority's finding that the trial court exceeded its proper limits. The appellant conceded at the revocation hearing that he had not served the eleven weekends remaining in his term, nor had he appeared when required before the district court or the probation office. Those two omissions were undisputed violations of the terms of the probationary grant. The district court's further finding that Hamilton was not lawfully employed in 1980 and 1981 was not clearly erroneous, and that was also a violation. While technical or minor violations should not form the justification for revocation, *United States v. Tyler,* 605 F.2d 851 (5th Cir.1979), the violations found by the district court were more than merely technical. In failing to complete the sentence, failing to keep his probation officer informed of his address, missing an appearance before the district court, and failing to maintain lawful employment, the appellant's conduct could properly be viewed as violating the core conditions of his probation. On such a record, the district court had sufficient basis to find the violations were serious and continuing, "so as to indicate that the [probationer] is not adjusting properly and cannot be counted on to avoid antisocial activity." *Morrissey v. Brewer,* 408 U.S. 471, 479, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972).

The majority leaned on its characterization of one of the reported violations as "stale," in that it had occurred three years prior to the revocation. It sees something "fundamentally unfair" about using this as a partial basis for the revocation. I disagree.

First, the record indicates that this earlier violation was only one of several upon which the court based its decision; more recent violations were also considered. Further, there has been no showing of prejudice to the probationer in the three year delay. To prejudice a probationer, such delay must impair his ability to contest the

alleged facts constituting his violations, cause hardship in finding and presenting favorable witnesses, or adversely affect his ability to produce evidence of mitigating circumstances demonstrating that his violations do not warrant revocation. *United States v. Wickham,* 618 F.2d 1307, 1310 (9th Cir.1980). That did not happen here. The appellant admitted that he did not serve the required time, had the opportunity to present mitigating circumstances, and produced two witnesses who testified on his behalf at the revocation hearing. Moreover, we have previously affirmed revocation of probation when the violations charged occurred up to four years before the initiation of revocation proceedings. *See United States v. Bonanno,* 452 F.Supp. 743, 761–62 (N.D.Cal.1978), *aff'd* 595 F.2d 1229 (9th Cir.1979).

In concluding that the district court abused its discretion in revoking the appellant's probation, the majority has chosen to interpret the factual allegations in a light highly favorable to the appellant. For example, based on the record on appeal, the majority has made a "finding" that appellant Hamilton "was misled or did not receive adequate notice as to the true nature of his obligations..." This approach misconstrues the nature of the evidence needed to support a probation revocation and it ignores our proper standard of review on appeal. The majority, with no justification, has "resolved" the inferences as if we, not the district court, had the advantage of and the responsibility for considering *facts* before it.

Because a revocation of probation is an exercise of the broad discretionary power of the district judge, evidence that would establish guilt beyond a reasonable doubt is not needed to demonstrate that a violation occurred. Nor is even "substantial evidence" required. Rather, in evaluating the evidence and facts, the district judge need only be "reasonably satisfied" that the conduct of the probationer has not been as good as required by the conditions of probation. *United States v. Bonanno,* 452 F.Supp. at 747 (N.D.Cal.1978), *citing United States v. Francischine,* 512 F.2d 827, 829 (5th Cir.), *cert. denied,* 423 U.S. 931, 96 S.Ct. 284, 46 L.Ed.2d 261 (1975). In consistently interpreting the evidence in a manner most favorable to the appellant, the majority appears to forget that the government is the prevailing party in the proceeding below. *Cf. United States v. Grayson,* 597 F.2d 1225, 1229 (9th Cir.), *cert. denied sub nom. MacGregor v. United States,* 444 U.S. 873, 100 S.Ct. 153, 62 L.Ed.2d 99 and 444 U.S. 875, 100 S.Ct. 157, 62 L.Ed.2d 102 (1979) (on appeal from a criminal conviction, reviewing court must construe the evidence in the light most favorable to the government).

The record before us does not support a conclusion that the district court abused its discretion. I think this conclusion of the majority is unfortunate. I would affirm the district court's revocation.