UNITED STATES of America, Plaintiff–Appellee,

v.

Bruce Robert SHAMPANG, Defendant–Appellant.

No. 92–30047.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1992.

Decided March 10, 1993.

As Amended June 2, 1993.

John C. Schulte, Missoula, MT, for defendant-appellant.

Kris A. McLean, Asst. U.S. Atty., Helena, MT, for plaintiff-appellee.

Before: WALLACE, Chief Judge, SKOPIL, and LEAVY, Circuit Judges.

WALLACE, Chief Judge:

Shampang appeals from the district court's revocation of his probation and imposition of a sentence of one year's imprisonment on the grounds that he had possessed a controlled substance in violation of 18 U.S.C. § 3565(a). Shampang contends that the district court erred in reading section 3565(a) to require mandatory revocation where the event triggering the revocation proceedings does not involve the use or possession of a controlled substance. Shampang also contends that the court's reliance on distant violations for which his probation officer told him he would not be punished violated his due process rights. The district court had jurisdiction pursuant to 18 U.S.C. § 3565(a). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

I

Shampang pleaded guilty to selling parts of a bald eagle and taking a bald eagle with the intent to sell, in violation of 16 U.S.C. §§ 703 and 707. As applied to Shampang, the Sentencing Guidelines called for a sentence of zero to six months' imprisonment. On November 13, 1990, the district court placed Shampang on probation for a term of three years, with conditions, including that he refrain from excessive use of alcohol and not possess or use a controlled substance. It also ordered

Shampang to pay restitution in the amount of $300 within one year of sentencing.

Soon after his sentencing, Shampang tested positive for T–H–C, a chemical in marijuana. Cooley, Shampang's probation officer, did not revoke Shampang's probation at that time but instead sent him a warning letter. During the revocation proceedings, Cooley acknowledged that the positive drug test could have been the result of marijuana use occurring prior to Shampang's being placed on probation.

In June 1991, Shampang registered five positive tests for T–H–C within a three week period. Cooley offered not to revoke Shampang's probation if Shampang enrolled in an inpatient drug treatment program. Shampang completed the program as agreed.

In November 1991, Shampang was arrested and convicted of driving under the influence of alcohol and sentenced to seven days in jail. Cooley then filed a petition to revoke Shampang's probation based on the two positive drug tests, the conviction for driving under the influence, and the failure to pay restitution as required under his sentence.

After a hearing, the district court found that Shampang had used and possessed a controlled substance as alleged in the petition. Because the violation involved the possession of a controlled substance, the court held revocation was mandatory. The court thereafter sentenced Shampang to one year in prison.

## II

■ In general, a decision to revoke probation is reviewed for abuse of discretion. *United States v. Duff*, 831 F.2d 176, 177 (9th Cir.1987). However, we review de novo the question, at issue here, whether the district court properly interpreted the applicable statute and correctly resolved the defendant's constitutional claim. *Id.*

Revocation of probation is governed by 18 U.S.C. § 3565. The first half of section 3565(a) was enacted as part of the Sentencing Reform Act of 1984 and vests the district courts with broad authority to punish probation violations. *See* Pub.L. No. 98–473, § 212(a)(2), 98 Stat. 1837, 1995 (1984) (codified as amended at 18 U.S.C. § 3565(a)(1) and (2)). At its discretion, the court may continue the defendant's probation with or without modification, or revoke it entirely. *See id.* As part of the Anti–Drug Abuse Act of 1988, however, Congress amended section 3565 to add:

> Notwithstanding any other provision of this section, if a defendant is found by the court to be in possession of a controlled substance, thereby violating the condition imposed by section 3563(a)(3), the court shall revoke the sentence of probation and sentence the defendant to not less than one-third of the original sentence.

Pub.L. No. 100–690, § 7303(a)(2), 102 Stat. 4181, 4464 (1988) (codified at 18 U.S.C. § 3565(a)).

We recently had occasion to interpret the 1988 amendment in *United States v. Corpuz*, 953 F.2d 526 (9th Cir.1992) (*Corpuz*). Corpuz had pled guilty to a counterfeiting charge and was sentenced to three years' probation. After Corpuz tested positive for methamphetamine, the district court revoked his probation. Although the Sentencing Guidelines had recommended a sentence of one to seven months' imprisonment for the underlying crime, the court sentenced Corpuz to one year's imprisonment, or one-third of the original term of probation. Relying on the language of section 3565 and related provisions, we affirmed the district court and reached two conclusions. First, we determined that the 1988 amendment strips the district court of its discretion over revocation decisions when a probationer violates probation by possessing a controlled substance. *See id.* at 530. In this situation, the court must revoke probation and must impose a sentence of incarceration of not less than one third of the original sentence. Second, we held that the term "original sentence" included the original period of probation. *See id.* at 528–29. Hence, the relevant baseline for computing the sentence after revocation is the original period of probation and not the period of incarceration

recommended under the Sentencing Guidelines for the underlying offense.

■ Shampang raises a new issue. He argues that section 3565(a) does not require a district court to impose a mandatory sentence when the immediate event triggering the revocation proceeding does not involve the possession of a controlled substance. In effect, Shampang asks us to limit *Corpuz* to those situations in which there is an unbroken line from controlled substance violation to revocation. Under his theory, without a current violation, all acts of possession that had previously been excused with a warning would not support mandatory revocation.

Shampang relies primarily on *United States v. White*, 770 F.Supp. 503 (W.D.Mo. 1991), which is factually very similar to this case. White had been sentenced to three years' probation. Although he twice tested positive for marijuana, the probation office decided to send him a letter of warning rather than revoke his probation. Several months later, White was arrested for driving under the influence of alcohol. The district court concluded that it was not required to impose a mandatory jail sentence even though White had possessed a controlled substance in violation of section 3565(a)(2). *See id.* at 504–05. The court reasoned:

> Read in accordance with probable Congressional intent, I believe the language [of section 3565(a)] is applicable when drug possession or use is the event that triggers a revocation proceeding. In other words, remote drug usage, unpunished except by a warning, will not be transformed into an event mandating lengthy imprisonment simply because, as here, it is listed as a violation in a proceeding triggered by something else (a drunk driving offense, in this case).

*Id.* at 505. Shampang argues that this circuit should adopt the reasoning of *White* and overturn his one-year jail sentence.

To do so, we would be required to graft a "triggering" requirement onto the plain language of section 3565(a). As we declared in *Corpuz*, the controlled substance provision of section 3565(a) added in 1988

eliminates the discretion a district court otherwise would have in revocation decisions. In clear language, Congress stated that "if a defendant is found by the court to be in possession of a controlled substance ... the court *shall revoke* the sentence of probation." 18 U.S.C. § 3565(a) (emphasis added). The 1988 amendment does not consider whether the alleged violation was the first or last event in a series of antisocial acts. Rather, by introducing "the mandatory 'shall revoke' probation, rather than the permissive 'may' that applies to violations generally under subsection (a)(2)," *Corpuz*, 953 F.2d at 530, the amendment narrowed the district court's inquiry to a single question: did the defendant possess controlled substances while on probation? If the answer is yes, the district court must revoke probation and must sentence the probationer to at least one-third of his original period of probation. Only by ignoring the plain language of section 3565(a) was the district court in *White* able to rule that it retained discretion whether to revoke.

Based on the plain language of section 3565(a), we hold that a district court must revoke probation under 3565(a) when the probationer possesses a controlled substance, whether or not this violation triggers the revocation proceeding. Here, the district court found that Shampang had possessed a controlled substance during his probation. Shampang does not challenge this finding. Therefore, the district court did not abuse its discretion in revoking Shampang's probation under section 3565(a)(2).

### III

■ Shampang also contends that the district court's decision to revoke his probation deprived him of his due process rights under the Fifth Amendment. Shampang appears to make two arguments. First, he contends that it is fundamentally unfair to revoke his probation based on distant violations that did not trigger the revocation proceedings. Second, he contends that the government should be estopped from using the June drug tests against him after his

probation officer had told him he would not be punished if he completed a drug rehabilitation program, which he did.

■ A district court may violate due process when it revokes probation based on stale violations. *See United States v. Hamilton*, 708 F.2d 1412, 1415 (9th Cir. 1983) (*Hamilton*). Unreasonable delay between the violation and the decision to revoke probation may prejudice the probationer by, among other things, making it more difficult for him or her to challenge the facts alleged to constitute a violation of probation conditions or to locate necessary witnesses. *See United States v. Wickham*, 618 F.2d 1307, 1310 (9th Cir.1979). The due process analysis, however, cannot be divorced from the overarching goal of the probation system: the rehabilitation of the probationer. *See Corpuz*, 953 F.2d at 528. The courts have long accorded probation officers wide discretion in determining whether to seek revocation. *See Morrissey v. Brewer*, 408 U.S. 471, 478–79, 92 S.Ct. 2593, 2598–99, 33 L.Ed.2d 484 (1972). Probation officers thus may choose to excuse probation violations with a warning in the hope of encouraging probationers to abide by the terms of their probation. *See Hamilton*, 708 F.2d at 1415 (stating that in order to further the rehabilitative function of probation, a probation officer "may ... wait to assess the cumulative effect of several violations before initiating a revocation proceeding").

Shampang contends that a district court may not, consistent with due process, revoke probation based on a violation that occurred six months before the initiation of revocation proceedings. This approach, however, would deprive the probation system of the flexibility it needs to carry out its rehabilitative function. The possibility that a probationer may face imprisonment based on earlier violations may exert a powerful incentive to behave. Without this incentive, probation officers may become less likely to excuse violations in the first place, thereby diminishing the efficacy of the probation program. *See United States v. Rice*, 671 F.2d 455, 458 (11th Cir.1982); *Kartman v. Parratt*, 535 F.2d 450, 455

(8th Cir.1976). Absent prejudice, therefore, a delay motivated by "a desire to utilize the rehabilitation process rather than abandon it" does not violate due process when the earlier violations are charged along with more recent ones because collectively they show "that the further attempt at rehabilitation had not succeeded." *United States v. Brown*, 656 F.2d 1204, 1208 (5th Cir. Unit A Sept.1981), *cert. denied*, 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 313 (1982); 3 LaFave and Israel, *Criminal Procedure* § 25.4, at 158 (1984); *see also United States v. Johnson*, 415 F.2d 1130, 1131 (9th Cir.1969) (holding that warning letter was not "such total forgiveness" of the probation violation as to bar the district court from considering it as grounds for revocation).

We conclude that the district court did not violate Shampang's due process rights when it revoked his probation. Cooley agreed not to seek revocation out of a desire to further Shampang's rehabilitation. Shampang's conviction for driving under the influence of alcohol demonstrated that Cooley's efforts had not succeeded. Shampang has not argued that the lapse of time between the violation and the filing of the revocation petition undermined his ability to question the reliability of the drug tests or present evidence of extenuating circumstances. Nor has he alleged that Cooley condoned his behavior or somehow misled him into breaking some other condition of his probation. In these circumstances, the delay of five months from the June violations was neither unreasonable nor fundamentally unfair. *Cf. Hamilton*, 708 F.2d at 1415 (holding district court abused its discretion in revoking probation based on three-year-old violation).

■ Although he uses the language of due process, Shampang in substance seeks to estop the government from using the June drug tests as a grounds for revoking his probation. "Estoppel prevents a party from showing the truth contrary to a representation of facts after another has relied upon the representation." *United States v. Hall*, 974 F.2d 1201, 1205 (9th Cir.1992).

A party seeking to estop the government must carry a "heavy burden." *Yerger v. Robertson*, 981 F.2d 460, 466 (9th Cir.1992). "In addition to the traditional elements of equitable estoppel, the party must prove two additional elements: First, the party asserting estoppel must establish affirmative conduct going beyond mere negligence. Second, the party must prove that not applying estoppel would result in a serious injustice, and that the public will not be unduly burdened by the imposition of estoppel." *Id.* (footnote, internal quotations, and citation omitted).

After Shampang tested positive for T–H–C in June 1991, Cooley told Shampang that "if he was willing to go to an inpatient treatment program or similar type program, that I did not want to see him go to jail as long as he had a good attitude towards treatment." Shampang entered and completed the program. During the revocation proceedings, Cooley testified that Shampang understood that he was not going to be charged with a violation for the June tests. Shampang contends that because he relied on Cooley's statements that he would not be revoked if he completed a drug rehabilitation program, the government should not now be able to use the June positive drug tests against him.

Shampang reads too much into Cooley's statements: Cooley merely promised that he would not seek revocation immediately if Shampang would seek treatment. He did not promise that he would never use the positive drug test as a possible ground for revocation if Shampang failed to abide by the terms of his probation in the future. Cooley excused Shampang's controlled substance violations out of a desire to rehabilitate Shampang. When these efforts failed, Cooley retained his discretion to seek revocation based on the June controlled substance violations. Because there is no evidence that Cooley sought affirmatively to mislead Shampang, we conclude that the government is not estopped from relying on the June tests.

AFFIRMED.