**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 8, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

MELVIN JERROD TOLIVER,

　　　　Defendant - Appellant.

No. 05-1331

(D. Colorado)

(D.C. No. 97-CR-388-N)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

Melvin Jerrod Toliver appeals the revocation of his supervised release and the imposition of a prison sentence for violating the terms of his supervised release. We affirm the revocation but remand for resentencing.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## BACKGROUND

In March 1998, Toliver pled guilty to one count of bank fraud. He was sentenced to twenty-seven months' imprisonment, followed by five years of supervised release. He was released from prison and commenced his term of supervised release in May 2000. His supervised release was revoked in December 2003 when he admitted two violations of his conditions of release.[1] The district court imposed the highest sentence available under the United States Sentencing Commission, Guidelines Manual ("USSG"), fourteen months, and imposed another three-year term of supervised release.

Toliver was released to commence serving his new three-year term of supervised release on October 5, 2004. Although he was required to report in person to his probation officer within seventy-two hours of his release, Toliver did not in fact report until October 26, 2004. On March 1, 2005, Toliver was evicted from his residence and became homeless. On March 7, 2005, Toliver's probation officer sought a warrant for Toliver's arrest, alleging six violations of his conditions of release: (1) failure to report to the probation officer as directed; (2) failure to follow the instructions of the probation officer; (3) failure to notify the probation officer of a change in residence; (4) failure to report arrest/questioning by law enforcement officers; (5) failure to operate a tow truck with a valid license and PUC permit; and (6) failure to report to the probation

_____

[1]These two violations apparently related to Colorado state law infractions.

office in person within seventy-two hours of release from custody of the Bureau of Prisons.

Toliver was arrested and appeared before a magistrate judge, who dismissed for insufficient evidence alleged violations (1), (2) and (5). The court then held a hearing on the remaining allegations and found Toliver not liable for alleged violation (4), but found him guilty of violations (3) and (6).

After finding that Toliver had violated those two terms of his supervised release, the court revoked Toliver's supervised release and sentenced him to twenty-two months' imprisonment. In doing so, it noted that the advisory Guidelines range was eight to fourteen months. But it decided to "impose a non-Guideline sentence,"[2] consistent with the government's request at the hearing, of twenty-two months because the court had considered "the nature and circumstances of this case and the history and characteristics of the defendant," as well as the statutory purposes of sentencing, including "most importantly in this case, the need for the sentence imposed to protect the public from further crimes of the defendant. And to afford adequate deterrence." Tr. of Hr'g at 43-44, R.

---

[2]The parties at times use the word "depart" and "departure" to describe the court's sentence in this case. As we noted in United States v. Sanchez-Juarez, 446 F.3d 1109, 1113 (10th Cir. 2006), some circuits have held that the concept of "departures" from Guidelines ranges has become obsolete since the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), rendered the Guidelines advisory. Our circuit still uses "departure" terminology in certain circumstances, but not with the same vitality and force that it had pre-Booker. Our decision in this case is not influenced by how the term is used or defined.

Vol. III. The district court also noted that Toliver had previously violated the conditions of his supervised release, and that Toliver's actions suggested he had learned nothing from his "very serious" criminal history. Id. at 44.

Toliver appeals the revocation and sentence, arguing (1) permitting the probation office to "resurrect" charge 6—failure to report to the probation office within seventy-two hours of his release from prison—five months after it happened violated Toliver's rights under the Due Process Clause; (2) the district court should have dismissed allegation 3 because Toliver either complied with the notification requirement or it is unconstitutionally vague in circumstances where Toliver became homeless; and (3) the sentence is invalid because the court drew improper inferences from the facts surrounding Toliver's eviction and used those facts as the basis for sentencing Toliver above the advisory Guideline range.

**DISCUSSION**

**I.    Failure to Report**

In January 2004, when Toliver was sentenced to fourteen months' imprisonment and three years of supervised release for violating the terms of his supervised release following his conviction and sentence for bank fraud, one of the conditions of his three-year supervised release term was that "[w]ithin seventy-two hours of his release from the custody of the Bureau of Prisons, [Toliver] shall report in person to the probation office."  Judgment at 3, R. Vol. I,

Doc. 57. Toliver concedes that he violated this condition when he was released in October 2004. He further concedes that "no in person meeting occurred until October 26, 2004, three weeks after Mr. Toliver's release, and well beyond the 72-hour deadline." Appellant's Op. Br. at 4. The probation office took no action at that time concerning this violation.

As indicated, Toliver and his family were evicted from their home on March 1, 2005. On March 7, Toliver was charged with, inter alia, failing to report to the probation office within seventy-two hours of his release from prison in October 2004. While Toliver concedes he violated this condition of his supervised release, he argues that the probation office's resurrection of this charge five months after its occurrence violates Toliver's Due Process rights.

Toliver's Due Process argument is a legal argument which we would ordinarily review de novo. Toliver admits that he did not raise this argument below, and that our review is therefore for plain error only. "Under that doctrine we will reverse the judgment below only if there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Teague, 443 F.3d 1310, 1314 (10th Cir. 2006) (further quotation omitted).

Under the Guidelines, the failure to report to the probation office within seventy-two hours of release is a Grade C violation. USSG §7B1.1(a)(3), p.s. The Guidelines further provide that a "probation officer shall promptly report to

-5-

the court any alleged Grade C violation unless the officer determines: (1) that such violation is minor, and not part of a continuing pattern of violations." Id. §7B1.2(b), p.s. Toliver argues the probation officer evidently determined that this was a minor violation because he did nothing about it (i.e., he failed to report it to the court) at the time. Then five months later, after the probation officer became aware of additional alleged violations of Toliver's conditions of supervised release, the probation officer decided to seek revocation of Toliver's supervised release on the basis of the failure-to-report, as well as five other alleged violations. We perceive no due process violation in that decision.

As indicated, a probation officer "shall promptly report . . . any alleged Grade C violation unless the officer determines . . . [the] violation is minor, and not part of a continuing pattern of violations." Id. Because Toliver's failure to report occurred at the commencement of his supervised release, the probation officer evidently adopted a "wait-and-see" attitude to see whether a "continuing pattern" of violations emerged, or whether Toliver instead remained in compliance with his conditions of release. Although we do not encourage the kind of delayed response to a clear violation of a condition of supervised release that occurred here, we decline to hold that a probation officer *must* promptly report every violation or forever lose the right to do so.

"The courts have long accorded probation officers wide discretion in determining whether to seek revocation." United States v. Shampang, 987 F.2d

1439, 1443 (9th Cir. 1993).  Indeed, as indicated, the Guidelines contemplate awaiting the development of a "continuing pattern of violations."  We cannot say that the probation officer violated Toliver's constitutional rights by doing just that.  "Absent prejudice, . . . a delay motivated by a desire to utilize the rehabilitation process rather than abandon it does not violate due process when the earlier violations are charged along with more recent ones because collectively they show that the further attempt at rehabilitation had not succeeded."  Id. (internal quotation omitted); see also Jones v. Johnson, 230 F.3d 825, 828 (5th Cir. 2000) ("[A]n original decision not to issue a revocation warrant in response to a probation violation may be reasonable and is not made unreasonable by a reevaluation in light of additional violations that the probationer later committed.").[3]  Toliver has demonstrated no prejudice here. Thus, we do not conclude that the district court committed plain error in determining that Toliver's admitted violation of the condition requiring him to promptly report to the probation office warranted the revocation of his release and

---

[3]Toliver relies upon United States v. Hamilton, 708 F.2d 1412 (9th Cir. 1983), in which a probationer who had violated a condition of his probation, and had informed the court of that violation, was not charged with that violation until three years later.  The court held that was too long.  That case is obviously distinguishable from the instant case.  While there are cases where an alleged violation of a term of probation or supervised release can become stale, this is not such a case.

the imposition of a prison term, even though the probation office delayed pursuit

of this violation for five months.[4]

---

[4]We note, however, that there are troubling aspects to the probation officer's conduct in this case. Toliver argues that, by failing to report to the court Toliver's failure to report to the probation officer within seventy-two hours, the probation officer evidently found it was a minor or technical violation. Yet the district court itself found the failure-to-report was not a minor violation:

> This man has a serious criminal history. And it is a matter of extreme importance that he be closely supervised. And to closely supervise him, that means he has to comply with these terms and conditions. It means there can be no looseness in supervised release.
> He didn't make contact with his probation officer even by telephone until the 26th of October. That was finally when they got together.
> Now, that is a period of about three weeks when he was not subject to supervision. This is why this is not a technical violation. It's not a technical violation, especially for somebody with this criminal history, because it is a matter of great urgency that somebody with his criminal history be supervised and be supervised continuously and immediately.

Tr. of Hr'g at 34-35, R. Vol. III. The seriousness of the failure-to-report violation, on the basis of Toliver's criminal history, would have been apparent to the probation officer, indeed to any observer, at the time of that violation. There was no need to wait and see if a "continuing pattern" of violations ensued. Our decision does not turn, however, on whether or not the district court correctly found the initial failure-to-report violation was technical or not. The probation officer had the authority to take a "wait-and-see" approach, and determine to seek revocation of Toliver's supervised release once he concluded that a continuing pattern of violations had occurred.

## II. Failure to Report Change of Address

Another condition of Toliver's supervised release was that he notify his probation officer ten days in advance of any change in his address. The district court found that he had violated this condition when he was evicted from his home and failed to notify his probation officer of this fact and failed to provide the officer a new contact address. Toliver challenges this finding on two bases: (1) the district court erred in finding that Toliver had in fact violated this condition; and (2) the condition requiring notification is unconstitutionally vague where the person subject to the condition becomes homeless.

### (1) Violation of condition

Revocation proceedings are governed by 18 U.S.C. § 3583(e), which directs a district court to consider factors set out in 18 U.S.C. § 3553(a) before determining a particular sentence for a particular defendant.

> Those factors include 1) the nature and circumstances of the offense, 2) the history and characteristics of the defendant, 3) the need for the sentence to afford adequate deterrence to criminal conduct, 4) the need to protect the public from further crimes of the defendant, 5) the need to provide the defendant with needed training, medical care, or correctional treatment, and 6) the sentencing range established under the sentencing guidelines or the policy statements applicable to a violation of supervised release.

United States v. Kelley, 359 F.3d 1302, 1304 (10th Cir. 2004) (citing 18 U.S.C. § 3553(a)). "If the government proves by a preponderance of the evidence that a defendant violated a condition of supervised release, . . . the district court has

discretion to revoke supervised release." United States v. Carothers, 337 F.3d 1017, 1019 (8th Cir. 2003) (citing 18 U.S.C. § 3583(e)(3) ("The [district] court may . . . revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release. . . .")). "On appeal, the district court's decision to revoke supervised release based on its finding of a violation is reviewed only for abuse of discretion." Id. (internal quotation omitted); see also United States v. Hammonds, 370 F.3d 1032, 1034 (10th Cir. 2004) ("We review orders revoking supervised release for an abuse of discretion."). Further, "as in other contexts where a district court has discretion to take certain action based on its findings of fact, the court's subsidiary factfinding as to whether or not a violation occurred is reviewed for clear error." Carothers, 337 F.3d at 1019 (internal quotation omitted).

Toliver's probation officer testified at the revocation hearing that after Toliver's eviction from his residence on March 1, 2005, he "had no idea where [Toliver] was until his arrest, May 4, 2005." Tr. of Hr'g at 7, R. Vol. III. He further testified that Toliver left him no "contact information." Id. The officer stated he "had several telephone conversations with [Toliver's] wife[,] [who] would repeatedly tell [the officer that Toliver] was out on a tow, he was out on a call, he was unavailable, but she had given him [the officer's] messages to call

. . . [a]nd [the officer] never spoke with Mr. Toliver until he was arrested on the warrant." Id. The officer further testified that, while Toliver had submitted his monthly report for March and made a restitution payment, his monthly report contained an "illegible" word under Toliver's street address. Id. at 16.

Toliver testified that the eviction came as a "surprise" to him, although he had been in a legal disagreement with his landlord "for like four months." Id. at 21-22. He further testified that he had posted an appeal bond, which he believed would stay any eviction, although he also testified that he knew the eviction "could have occurred at some point in and around" March 1. Id. at 23. Toliver also testified that he did not recall efforts by his probation officer to contact him after he was evicted, and that the word the officer testified was illegible on his monthly report was meant to state "homeless." Id. at 24. Toliver argues that his probation officer knew he had been evicted, so notification was pointless. He then argues that, because he was homeless, he was unable to notify his probation officer of any address.

The district court found that Toliver "knew that he was going to be evicted or that there was going to be some action on or around March 1[,] [although] [i]t's extremely unclear what was happening here." Id. at 36. The court further found:

> Even if [the court] were to accept the excuse that [Toliver] somehow didn't know ten days in advance that he was going to be evicted, the fact is, he didn't make any attempt for months to really

-11-

keep the probation officer informed of any change in address or where he was or that he was living out of his car or anything like that.

      The Court finds on the evidence that [Toliver] did fail to notify the probation officer of a change in residence, if not ten days prior to the change in residence, but then certainly within a reasonable period of time afterwards. [Toliver] never notified the probation officer, and the probation officer didn't know where he was until he was arrested on May 4.

Id. at 37-38.

The record supports the district court's finding that Toliver violated the condition of his release obligating him to inform his probation officer of a change of his address. As the district court noted, even if Toliver was unaware that he would be evicted ten days in advance of that eviction, the condition clearly obligated Toliver to notify his probation officer after the eviction and provide him with an address where the probation officer could contact Toliver. Toliver simply failed to do that. The fact that the probation officer learned of Toliver's eviction on March 1 is beside the point. The obvious rationale for the condition is to enable the probation officer to remain in touch and contact with his probationer whenever the probationer changes address. Being rendered homeless does not absolve a probationer of this obligation; it simply means the probationer must inform the probation officer of an address—such as the address of a shelter, a street address where the probationer's car/home is parked regularly, etc.—where the officer can contact the probationer. The district court did not err in finding

that Toliver had violated the condition obligating him to notify his probation officer of a change of address.

**(2) Unconstitutional vagueness**

Toliver argues the condition requiring notification of a change of address is unconstitutionally vague when the probationer becomes homeless. Toliver failed to make this argument below, so we review it only for plain error. "Under that doctrine we will reverse the judgment below only if there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." Teague, 443 F.3d at 1314 (further quotation omitted).

Toliver fails to develop a distinct and separate argument on this point, other than to argue that the condition of release says nothing about homelessness and what a person on supervised release must do when rendered homeless. However, as indicated above, the rationale for the condition is obvious. Equally obvious is how a homeless person should comply with the condition. Accordingly, we perceive no plain error in the district court's determination that Toliver violated this condition of release following his eviction.

## III. Validity of Sentence

Toliver also challenges his twenty-two month sentence, arguing that "in departing from the policy statements contained in the federal sentencing

-13-

guidelines" and imposing a sentence higher than the range provided by the advisory Guidelines, the court impermissibly "mixed valid reasons with invalid ones." Appellant's Op. Br. at 23. In particular, Toliver alleges that the court improperly "extrapol[ated] and criminaliz[ed] . . . the facts surrounding the eviction as a continuation of Mr. Toliver's prior criminal activity." Appellant's Reply Br. at 14.

The "imposition of a sentence in excess of that recommended by the Chapter 7 policy statements of the Sentencing Guidelines will be upheld if it can be determined from the record to have been reasoned and reasonable." United States v. Tedford, 405 F.3d 1159, 1161 (10th Cir. 2005) (further quotation omitted). A close analysis of the record of the revocation and sentencing proceedings in this case reveals some troubling aspects which make our review on appeal difficult. In accordance with a typical proceeding involving an alleged violation of supervised release, the United States Probation Office prepared a Supervised Release Violation Report ("SRVR"). It noted that, pursuant to the policy statements in the Guidelines, with a Grade C violation of a condition of supervised release, and with Toliver's criminal history category of VI, the advisory Guideline imprisonment range was eight to fourteen months. SRVR at 3, Supp. Vol. III. Under "Factors that May Warrant Departure" the SRVR stated "[n]one." Id. Both parties received copies of the SRVR and were permitted to

make objections thereto. Toliver did not object to it. The SRVR contained the

following in its discussion of Toliver's supervision history:

> On December 8, 2004, [Toliver] reported to my office and told me he
> was residing at 1925 S. Bannock St., Denver Colorado 80223. On
> December 21, 2004, I responded to this residence and learned that
> [Toliver] was both living and working out of this location.
> Conversations with [Toliver's] landlord, Jerry Piper, revealed
> Mr. Piper had numerous problems with [Toliver] paying his rent with
> insufficient funds checks, damaging the property, stealing door locks,
> etc. [Toliver] was ultimately evicted from this residence on March 1,
> 2005.

Id. at 4.

The record also contains a Sentencing Recommendation from the Probation

Office, which government counsel at oral argument represented was not given to

both parties, but only to the district court. This document recommended a

sentence of twenty-two months, for the following reasons:

> [Toliver] has clearly demonstrated that he is not amenable to
> continued community-based supervis[ion]. He has abused his
> financial responsibilities with his bank, writing numerous insufficient
> funds checks to individuals and vendors in the Denver metropolitan
> area. [Toliver] has pending charges in Arapahoe County that could
> result in a lengthy person term. [Toliver] has the ability to run a
> very lucrative business; however, he chooses to gain prosperity
> through illicit means. His criminal history commenced nearly 22
> years ago and includes numerous convictions for theft related
> matters. He is viewed as an extreme risk to the community and
> accordingly, continued supervision is not recommended.

Id. at R-1.

At sentencing, Toliver asked for a sentence at the bottom of the advisory

Guideline range of eight to fourteen months, and the government sought an

-15-

upward "departure" to twenty-four months, "based on [Toliver]'s criminal history, as well as his second try on supervised release, which failed." Tr. of Hr'g at 40, R. Vol. III.[5] The court then "impose[d] a non-Guideline sentence" in consideration of "the nature and circumstances of this case[,] . . . the history and characteristics of the defendant[,] . . . the kinds of sentences available and the applicable Federal Sentencing Guidelines specifying a term of 8 to 14 months." Id. at 43-44. The court explained its twenty-two month sentence as "necessary to achieve the statutory purposes of . . . most importantly in this case, the need for the sentence imposed to protect the public from further crimes of the defendant. And to afford adequate deterrence." Id. at 44. The court further observed that Toliver had previously violated the conditions of his supervised release and that he had a "very serious criminal history." Id. Toliver bases his argument on the following statement by the court: Toliver's "current activities suggest he's learned nothing from that criminal history. His criminal history consists at least in part of insufficient fund checks, theft by check, and similar violations, and he continues to do that, giving his landlord insufficient fund checks." Id. Thus, the court included explicitly as a reason for the sentence above the Guideline range the fact that Toliver had given his landlord "insufficient fund checks." Yet, as

_____

[5]Later in the proceeding, the government indicated it sought a sentence of twenty-two months. Tr. of Hr'g at 43, R. Vol. III. Whether the government asked for twenty-two or twenty-four months, both are above the advisory Guideline range.

Toliver points out, other than the bare statement in the SRVR, there is no evidence in the record supporting that allegation, nor any evidence that that was the reason for Toliver's eviction.

More troubling, however, is the unexplained discrepancy between the affirmative statement in the SRVR, which Toliver had received, that there were no reasons for a sentence higher than the Guideline range, and the twenty-two month above-Guideline recommendation in the Sentencing Recommendation, which Toliver apparently did not see. We have recently held that a district court must give the parties notice of its intent to impose an upward Guideline departure. United States v. Calzada-Maravillas, 443 F.3d 1301, 1303-06 (10th Cir. 2006). While we specifically stated that we "need not resolve in this case whether the notice requirement also applies to non-guideline departures under the factors listed in 18 U.S.C. § 3553(a)," Calzada-Maravillas, 443 F.3d at 1305, and this case arguably involves such a non-Guideline departure, nonetheless we find troubling the court's decision at the hearing to sentence Toliver above the advisory Guideline range, based in part upon a comment in the SRVR which finds no other support in the record. In particular we are disturbed by the divergence between the SRVR and the Sentencing Recommendation, given the implicit representation in the SRVR that there would be no "departure" from the advisory Guideline range. Even if the SRVR was referring technically to a Guideline departure only, the implication of the word "none" under grounds for departure

-17-

would have been taken more broadly by counsel. While the government emphasizes that Toliver failed to object to the SRVR, including its comment about Toliver giving his landlord bad checks, Toliver would have had no incentive to object to that statement because the SRVR indicated that a sentence within the advisory Guideline range was appropriate and that there were no grounds for a more severe sentence. See id. at 1306 (noting that the defendant "relied on the recommendations set forth in the PSR [and] [a]s a result, he had no incentive to challenge the circumstances of his prior convictions or deportations because he had no reason to believe that the court would rely on them to further increase his sentence").

In sum, we find the record of the sentencing proceedings in this case to be sufficiently puzzling and disjointed that we find it difficult to review the sentence imposed to determine if it was the product of reasoned deliberation on an adequate record, with an appropriate opportunity for Toliver to rebut the reasons given for the sentence above the advisory Guideline range. We accordingly remand this case for resentencing. We express no opinion on what the sentence should be, and this opinion should not be read as stating that the sentence imposed is reasonable or unreasonable under the standards we now apply since

United States v. Booker, 543 U.S. 220 (2005). See United States v. Rodriguez-Quintanilla, 442 F.3d 1254, 1258 (10th Cir. 2006); Tedford, 405 F.3d at 1161.[6]

**CONCLUSION**

For the foregoing reasons, we AFFIRM the revocation of Toliver's supervised release and REMAND to the district court with instructions to VACATE Toliver's sentence and to resentence him following a hearing.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge

---

[6]We grant the government's motion to supplement the record.