**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose Ramon ORTIZ, Defendant–
Appellant.**

**No. 05–10681.**

United States Court of Appeals,
Ninth Circuit.

Submitted June 14, 2006.*

Filed June 19, 2006.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Laura Christina Giaquinto, Office of the U.S. Attorney, Tucson, AZ, for Plaintiff–Appellee.

Rodolfo V. Lopez, Attorney at Law, Tucson, AZ, for Defendant–Appellant.

Before: RYMER and T.G. NELSON, Circuit Judges, and KING,** District Judge.

## MEMORANDUM ***

Jose Ramon Ortiz appeals the district court's revocation of his supervised release. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

The decision to revoke supervised release "typically involves two distinct components: (1) a retrospective factual question whether the probationer has violated a condition of [supervised release]; and (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation[.]" *Black v. Romano*, 471 U.S. 606, 611, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985).

Ortiz does not dispute that on April 1, 2004, he used marijuana and added water to dilute his urine sample. Both acts violated conditions of his supervised release.

** The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

Thus, only the second prong (the discretionary determination to revoke) is at issue. The district court's decision to revoke supervised release is reviewed for an abuse of discretion. *United States v. Verduzco*, 330 F.3d 1182, 1184 (9th Cir.2003).

## I.

Ortiz argues the revocation proceedings were fundamentally unfair and deprived him of due process because the probation officer's "real reason" (which was not charged) for petitioning for revocation was Ortiz's failure to provide a "safe environment" for the officer's home visits. *See, e.g., United States v. Shampang*, 987 F.2d 1439, 1442–43 (9th Cir.1993) (applying due process standards to revocation of probation proceedings); *United States v. Simmons*, 812 F.2d 561, 565 (9th Cir.1987) (setting forth general due process notice requirement applicable in revocation situations).

This argument fails, however, because the district court did not revoke Ortiz's supervised release because of an "unsafe environment" for supervision. Rather, the district court revoked supervised release because of Ortiz's entire record following his conviction in 2000. His record while on supervised release includes, among other acts: (1) use of alcohol in 2000, (2) a drunk-driving arrest in 2001, (3) a citation for assault in May of 2002, (4) a trespass conviction in September of 2002, (5) the charged conduct of marijuana use on April 1, 2004, (6) the charged conduct of attempted falsification of a drug test by diluting a urine sample with water on April 1, 2004, (7) an arrest for custodial interference in July 2004, (8) use of alcohol in

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

August of 2005, (9) a September 2005 drug test that was positive for opiates (from using a prescription medication, obtained without a prescription), and (10) use of alcohol in September of 2005 (BAC of 0.038 following a motorcycle accident). *See Shampang,* 987 F.2d at 1443 (allowing consideration of "the cumulative effect of several violations" before initiating revocation proceedings) (quoting *United States v. Hamilton,* 708 F.2d 1412, 1415 (9th Cir. 1983)); *see also United States v. Johnson,* 415 F.2d 1130 (9th Cir.1969) (reasoning that a minor violation could be "the straw that broke the camel's back" allowing revocation when considering prior violations).

Indeed, this was Ortiz's second adjudicated violation of supervised release. Revocation is appropriate for repeat violations. *See* U.S. Sentencing Guidelines Manual § 7B1.3, cmt. n. 1 (2004) ("Revocation of probation or supervised release generally is the appropriate disposition in the case of a Grade C violation by a defendant who, having been continued on supervision after a finding of violation, again violates the conditions of his supervision.").

Even if the "real reason" (or part of the reason) the probation officer sought revocation was that Ortiz would not allow the officer into his home and created a dangerous environment for supervision, this does not change the district court's (unchallenged) factual finding of two independent violations of supervised release. These violations alone would justify revocation. *See, e.g., United States v. Carrion,* 457 F.2d 808 (9th Cir.1972).

Even assuming the district court *had* considered the "real reason" for seeking revocation (and that such consideration was improper without prior notice to Ortiz), any presumed error would be harmless. *See Verduzco,* 330 F.3d at 1184 ("A due process violation at a revocation proceeding is subject to harmless error anal-

ysis.") (citations omitted). That is, assuming Ortiz could have proven his home environment *was* safe for supervision visits, the April 1, 2004, marijuana use and diluted urine sample provided independent grounds for revocation.

## II.

■ Ortiz also argues that it was unfair to revoke supervised release since he attended a drug counseling program—as required by the probation officer—because of the April 1, 2004 violations. The argument fails because attending the counseling program did not prevent a subsequent revocation petition based upon those violations. *See, e.g., Shampang,* 987 F.2d at 1443 ("probation officers [have] wide discretion in determining whether to seek revocation") (citing *Morrissey v. Brewer,* 408 U.S. 471, 478–79, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). There is no indication that Ortiz was misled or promised that supervised release would not be revoked if he attended counseling. "Probation officers ... may choose to excuse probation violations with a warning in the hope of encouraging probationers to abide by the terms of their probation." *Shampang,* 987 F.2d at 1443. If the officer subsequently concludes "that the further attempt at rehabilitation had not succeeded," the officer may seek revocation based upon the earlier violation. *Id.* The record also belies Ortiz's contention that the counseling was "successful."

In any event, the probation officer's subjective reason to seek revocation—in the absence of any improper motivation such as race, religion, or similar classification—is not dispositive. "The probation officer's petition does not itself initiate revocation proceedings; instead, it is the district court that ultimately decides whether to initiate revocation proceedings after considering the probation officer's report and petition." *United States v. Mejia–Sanchez,* 172 F.3d 1172, 1175 (9th Cir.1999).

Finally, the eight-month delay between the charged conduct and the revocation petition did not violate due process. The delay resulted from the intervening counseling and subsequent supervision, which were attempts "to utilize the rehabilitative process rather than abandon it." *Shampang*, 987 F.2d at 1443 (citations and internal quotation marks omitted). Ortiz was also not prejudiced by the delay. He was not deprived of any opportunity to challenge the April 1, 2004, charged conduct (which was not disputed), and in fact succeeded in challenging other allegations (another alleged use of marijuana on April 14, 2004, and failure to submit to drug testing in June and July of 2004). Accordingly, the delay was reasonable and not fundamentally unfair. *Id.*

**AFFIRMED.**

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.