UNITED STATES of America, Plaintiff-Appellee,

v.

Billy Sunday TYLER, Defendant-Appellant.

No. 79–5246.

United States Court of Appeals, Fifth Circuit.

Oct. 31, 1979.

J. Foster Clark, Birmingham, Ala. (Court-appointed), T. Dwight Sloan, Birmingham, Ala. (Court-appointed co-counsel), for defendant-appellant.

Herbert H. Henry, Dayle Powell, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before GEWIN, AINSWORTH and REAVLEY, Circuit Judges.

PER CURIAM:

The probationary term being served by appellant Billy Sunday Tyler on a conviction for possession of an unregistered firearm was revoked in the Northern District of Alabama after a hearing on March 8, 1979. On this appeal he contends that he was denied due process and fundamental fairness by his probation officer's failure to charge the violations which became the basis for revocation on March 8 in a previous revocation petition even though the officer knew of the violations at the time the first petition was filed. Tyler also contends that the delay of up to two years and three months in bringing these charges, despite the fact that they were timely reported, is fundamentally unfair. We find merit in Tyler's contentions and reverse.

Tyler entered a plea of guilty on September 20, 1974 to an indictment for possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). He was given a five year sentence, the first six months of which were to be served in a penal institution. The remainder was to be served on probation. Tyler began his probationary term on February 28, 1975.

Between November 24, 1976 and January 28, 1978, Tyler was convicted of three misdemeanor charges including public drunkenness and insulting a police officer and paid a total of eighty dollars ($80.00) in fines in all three cases. All these incidents were timely reported to his probation officer.

On November 14, 1978 a small amount of marijuana was seized from Tyler's residence and a revocation petition, based solely on possession of marijuana, was filed on the following day. At a hearing on November 22, 1978, the district court ruled that the evidence failed to establish that Tyler was guilty of the matters alleged.

On March 1, 1979, the probation officer filed a second revocation petition against Tyler, alleging as violations of probation the three misdemeanor convictions he sustained between November 1976 and January 1978. After a second hearing, in which the staleness of these convictions was brought to the court's attention, Tyler's probation was revoked and he was recommitted to prison on March 8, 1979 to serve the remaining four and one-half years of his original sentence.

It is now beyond question that due process rights guaranteed by the Fourteenth Amendment must be afforded to parolees. *See Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The same protections were extended to probationers by the United States Supreme Court in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656

(1973). *See also Greenholtz v. Nebraska Penal Inmates,* —— U.S. ——, ——, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 676 (1979) (Equating due process rights of parolees and probationers). "It is clear at least after *Morrissey v. Brewer* . . . that a probationer can no longer be denied due process . . . ." *Gagnon v. Scarpelli,* 411 U.S. at 782 n.4, 93 S.Ct. at 1760 fn. 4.

■ While these landmark cases deal specifically with the right of a probationer to have a hearing, it is clear that the Fourteenth Amendment due process provisions contemplate that any such hearing must comport with principles of fundamental fairness. *See Morrissey v. Brewer,* 408 U.S. at 484, 92 S.Ct. 2593. In this case the probation officer had known of all three of the charges alleged for at least a year and had known of one of them for over two years. He had unsuccessfully attempted to revoke Tyler's probation almost ten months after the last of the three charges had been committed but did not allege any of the misdemeanors in that earlier petition. We find that, under these circumstances, the March 8, 1979 hearing, in which only the state misdemeanor convictions were alleged, denied the probationer his rights to due process.[1] Absent some unusual circumstance or some deception by the probationer[2] such a lengthy delay, coupled with the probation officer's obvious decision not to file these charges in the first petition, is fundamentally unfair.

■ We do not hold that, in a proper case, there can never be a second revocation hearing alleging violations committed before a previous hearing was held.[3] Nor do we suggest that a revocation proceeding should be initiated as a reflexive reaction to any technical or minor violation of the terms of probation.[4] The probationary system, however, imposes a duty on a probation officer to represent the interests of both society and the probationer. An unreasonable delay in bringing charges of violations or a piecemeal approach in seeking revocation will rarely, if ever, serve the interests of either.

The improper revocation here involved is reversed and Tyler, having completed his probationary term, is due to be released.

REVERSED.

1. At least one court has held that a failure to exercise reasonable diligence to revoke parole where there has been a violation committed "may result in a waiver of the violation and loss of jurisdiction." *Greene v. Michigan Department of Corrections,* 315 F.2d 546, 547 (6th Cir. 1963).

2. The Seventh Circuit, when faced with this issue, stated that, "Whether the delay was unreasonable depends upon whether Sciuto deceived the probation officer." *United States v. Sciuto,* 531 F.2d 842, 847 (7th Cir. 1976). That court determined that there was evidence of deception in that case. *Id.* No such evidence appears in the present case.

3. During oral argument the government relied heavily on *Kartman v. Parratt,* 535 F.2d 450 (8th Cir. 1976) to support its position that the second revocation hearing was proper in this case. Yet *Kartman* is clearly distinguishable on several grounds. A legal distinction is that it involved a state prisoner seeking federal habeas corpus relief based on revocation of his state probation. Factually *Kartman* is distinguishable in that the first revocation petition was withdrawn rather than proceeding to adjudication and Kartman's probation officer, unlike Tyler's apparently did not know of the grounds alleged in the second petition when he filed the first one. Additionally the delay between the oldest violation charged against Kartman and his revocation hearing was less than ten months. The corresponding delay in the present case was two years and three months.

4. A recent Eighth Circuit case offers the following instructive language:

> The decision [not] to revoke probation should not merely be a reflexive reaction to an accumulation of technical violations of the conditions imposed upon the offender. That approach would be inconsistent with and detrimental to the goals of the probation program . . . . Rather, probation should be revoked only in those instances in which the offender's behavior demonstrates that he or she "cannot be counted on to avoid antisocial activity." *Morrissey v. Brewer, supra,* 408 U.S. at 479, 92 S.Ct. at 2599.

*United States v. Reed,* 573 F.2d 1020, 1024 (8th Cir. 1978).