United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 17, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 05-40092
_____

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

                        versus

FERMIN ZAMORA-VALLEJO,

                                        Defendant - Appellant.
_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:04-CR-848-ALL
_____

Before JOLLY, DAVIS, and BENAVIDES, Circuit Judges.

BY THE COURT:

    In an opinion issued in this case on October 23, 2006, we indicated that the government had not cited or distinguished several controlling precedents.  The court was in error in the sense that, because of the decision in United States v. Booker[1] and Hurricane Katrina, resolution of this case was delayed and the court failed to notice that the original briefs were filed on August 19, 2005, before several of the controlling cases were decided.  We regret the error and issue a revised opinion omitting our critical comments.  The previous opinion is withdrawn and the revised opinion is substituted therefor.

_____

    [1]543 U.S. 220 (2005).

United States Court of Appeals

Fifth Circuit

**F I L E D**

**October 23, 2006**

Charles R. Fulbruge III
Clerk

REVISED NOVEMBER 17, 2006

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-40092

_____

UNITED STATES OF AMERICA,

                                    Plaintiff - Appellee,

                    versus

FERMIN ZAMORA-VALLEJO,

                                    Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

Before JOLLY, DAVIS, and BENAVIDES, Circuit Judges.

PER CURIAM:

    This "Fanfan"[2] sentencing appeal requires us to determine
whether the district court's decision to run the defendant's
sentences consecutively for crimes that were unrelated yet
triggered by the same conduct demonstrates beyond a reasonable
doubt that the sentence would have been the same under an advisory

_____

    [2]See United States v. Walters, 418 F.3d 461, 463 (5th Cir.
2005) (explaining that "Fanfan" error, one of two types of error
addressed in United States v. Booker, 543 U.S. 220 (2005), "is
found where the district court applied the mandatory Guidelines to
enhance a defendant's sentence absent any Sixth Amendment Booker
error").

(instead of mandatory) Sentencing Guidelines scheme.  We hold that it does not and thus we vacate and remand for resentencing.

I

In 2003, Fermin Zamora-Vallejo ("Zamora") was sentenced to eight months in prison and two years of supervised release for unlawfully transporting aliens.  After serving his prison sentence, Zamora was deported.  In October 2004, while still on supervised release, he pleaded guilty to being in the United States illegally after having been deported, in violation of 8 U.S.C. § 1326 (a) and (b).  The terms of Zamora's plea with the government included agreements to be sentenced under the applicable Sentencing Guidelines and to waive any right to have sentencing facts charged in the indictment, found by a jury, or found beyond a reasonable doubt.[3]

Under the 2004 edition of the Sentencing Guidelines Manual, the U.S. Probation Office drafted a Pre-Sentence Report (PSR) that

---

[3]In relevant part, the agreement stated that:

> The defendant, by entering this plea, also waives any rights to have facts that the law makes essential to the punishment either (1) charged in the indictment or (2) proven to a jury or (3) proved beyond a reasonable doubt. The defendant explicitly consents to be sentenced pursuant to the applicable Sentencing Guidelines. The defendant explicitly acknowledges that his plea in the charged offense(s) authorizes the court to impose any sentence authorized by the Sentencing Guidelines, up to and including the statutory maximum under the relevant statute(s).

3

set Zamora's base offense level at eight. It then added 16 levels due to his earlier deportation following a felony conviction for transporting aliens. After a two-point reduction for acceptance of responsibility, Zamora's total offense level was 22. With a criminal history category of III, the sentence range under the Guidelines was 51 to 63 months.

Zamora objected to the constitutionality of the 16-level enhancement and the 20-year maximum of § 1326 (b), citing <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), but the objections were overruled. After reducing the total offense level by three to 19 (rendering the Guidelines range 37 to 46 months) on its own initiative, the district court sentenced Zamora to 37 months for the § 1326 violation.

At the sentencing hearing, Zamora also pled true to violating his supervised release by having returned to this country after deportation. The district court then revoked the supervised release and sentenced him to 11 months in prison, with that sentence to run consecutively to the 37-month § 1326 sentence. At the hearing, the court stated it believed the total sentence was "fair and appropriate sentencing under the applicable law after considering all the relevant considerations." Zamora timely appealed.

## II

Zamora's challenge raises two primary issues: First, whether his plea agreement bars this appeal; second, whether the district

4

court's application of the Sentencing Guidelines constitutes harmful error under the Supreme Court's <u>Booker</u> decision and this court's precedent.[4]  We consider them in turn.

A

The Government contends that Zamora is barred from bringing his challenge by the terms of the plea agreement.  This argument is foreclosed by <u>United States v. Reyes-Celestino</u>, 443 F.3d 451, 453 (5th Cir. 2006),[5] which deals with precisely the same waiver language, circumstances and the type of challenge as this case.  There we held that "under these circumstances, a defendant who agreed 'to be sentenced pursuant to the applicable Sentencing Guidelines' is not precluded from raising on appeal an alleged 'Fanfan' error."  <u>Id.</u>  Thus Zamora is free to challenge his sentence.

B

As noted, Zamora raised an objection at his sentencing hearing to the mandatory application of the Guidelines in the light of <u>Blakely</u> and <u>Apprendi</u>.  His objection is sufficient to preserve the "Fanfan" error for review, to which we apply the harmless error standard.  <u>Reyes-Celestino</u>, 443 F.3d at 453.  Under this standard,

---

[4]To preserve the issue for possible review by the Supreme Court, Zamora also challenges the constitutionality of § 1326. This argument, as he concedes, is foreclosed.  <u>See</u> <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 235 (1998); <u>United States v. Garza-Lopez</u>, 410 F.3d 268, 276 (5th Cir. 2005).

[5]<u>See</u> <u>also</u> <u>United States v. Sibley</u>, 448 F.3d 754, 759-60 (5th Cir. 2006).

the Government carries the "arduous" burden of proving "beyond a reasonable doubt that the district court would not have sentenced [the defendant] differently had it acted under an advisory Guidelines regime." United States v. Garza, 429 F.3d 165, 170 (5th Cir. 2005) (internal citations omitted).[6]

Here the Government offers two items of evidence to show that the "Fanfan" error was harmless. First, the district court ordered Zamora to serve his two sentences consecutively. Second, the court stated on the record its belief that the entire sentence was "fair and appropriate." It is true that we have previously found an express refusal by the district court to run two sentences concurrently as evidence that "there could not have been harmful error." United States v. Prones, 145 F. App'x 481 at *1 (5th Cir. 2005) (unpublished). More recently, however, in two published cases we reasoned that "whether imposition of consecutive sentences is sufficient to demonstrate that a Booker error is harmless is a fact-sensitive inquiry that must examine the relationship between the two sentences imposed." United States v. Woods, 440 F.3d 255, 260 (5th Cir. 2006); accord United States v. Moore, 452 F.3d 382, 392 (5th Cir. 2006). In each of those cases we remanded for a new sentence because the consecutive sentences were given for crimes that were not "factually related." Moore, 452 F.3d at 392. We

---

[6]We again reject the Government's argument that a different harmless error standard applies; the precedent of this court is quite clear on this point. See, e.g., Reyes-Celestino, 443 F.3d at 453; Walters, 418 F.3d at 464.

reached this conclusion because the court could not "ascribe any motivation to the district court other than adherence to the default rule that totally unrelated crimes should ordinarily receive distinct punishment." Woods, 440 F.3d at 260.

Thus the question before us is whether Zamora's two crimes are "factually related" such that we are persuaded this "default rule" does not obtain. Again, his 37-month sentence was imposed for violating § 1326 (being present in this country illegally after deportation) and his 11-month sentence was for violating his supervised release term for the prior crime of alien trafficking. Although it is certainly true that the violation of § 1326 was the trigger for revoking Zamora's supervised release and for sentencing him to the 11 months in prison, it is also true that these two sentences are punishing factually unrelated crimes. The 11-month sentence is only a more severe form of punishment than supervised release for Zamora's prior, unrelated crime of alien trafficking.[7] Consequently we do not believe that this case can be distinguished

---

[7]In a slightly different context we recently held that "[s]upervised release [is a] component[] of the original sentence[] ... [and therefore its] revocation is not a separate charge, but rather a continuation of the original charge." United States v. Valdez-Sanchez, 414 F.3d 539, 542 (5th Cir. 2005). There the defendants had argued that the revocation of supervised release for earlier crimes was based on the *same conduct* as their § 1326 crimes, while the Government argued revocation was merely an extension of the earlier charges. Id. at 541 (emphasis supplied). The logic of Valdez-Sanchez is clearly that while the same conduct might trigger revocation of supervised release and constitute a § 1326 violation, that does *not* mean it is the same conduct that is being punished in two such sentences. See id.

from <u>Woods</u> and <u>Moore</u>; we will not infer that the district court meant to do anything other than provide two distinct sentences, one for breaching the terms of supervised release related to alien trafficking, and one for the § 1326 crime. <u>Woods</u>, 440 F.3d at 260.

The Government's second argument is similarly unavailing. Although the district court's comment that the two sentences were "fair and appropriate ... under the applicable law after considering all the relevant considerations" could be read such that the court implied that it would have given the same sentence under an advisory Guidelines regime, such a reading is not compelling. It is as likely that "the applicable law" the court had in mind included what were then mandatory Sentencing Guidelines. In any event, we conclude that this statement, ambiguous in the context of the sentencing proceeding, is insufficient to meet the burden the government bears, and thus the Government has failed to show that the "Fanfan" error was harmless.

III

For the reasons explained above, we VACATE Zamora's sentence and REMAND for resentencing.

VACATED and REMANDED.

8