# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 4, 2008

Charles R. Fulbruge III
Clerk

No. 06-11323

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JULIAN DIAZ RAMIREZ

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:96-CR-10

Before BENAVIDES, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Julian Diaz Ramirez ("Ramirez") appeals the district court's imposition of a 24-month term of imprisonment upon revocation of his supervised release. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Ramirez pleaded guilty in the United States District Court for the Northern District of Texas, Dallas Division (the "Dallas court") to illegally re-entering the United States after deportation, in violation of 8 U.S.C. § 1326(a)

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and (b)(1). On April 11, 1996, the Dallas court sentenced him to 60 months' imprisonment and three years' supervised release on the condition that he surrender for deportation on completion of his term of imprisonment. On March 14, 2000, he was released from prison and deported to Mexico. Ramirez again entered the United States illegally, and on February 20, 2002, he was convicted in the United States District Court for the Northern District of Mississippi (the "Mississippi court") of illegal reentry in violation of 8 U.S.C. § 1326(b)(2). The Mississippi court sentenced him to another 60 months' imprisonment and three years' supervised release. On April 26, 2002, Ramirez's probation officer petitioned the Dallas court to issue a supervised release violator's warrant, alleging that the Mississippi court conviction showed that Ramirez had violated the terms of his first supervised release. Before this warrant was executed, however, Ramirez completed the term of imprisonment the Mississippi court had imposed, and he was deported in December 2005. It is not clear why the warrant was not executed prior to his deportation.

On August 14, 2006, Ramirez was convicted in the United States District Court for the Western District of Texas, Del Rio Division (the "Del Rio court") of a third illegal reentry in violation of 8 U.S.C. § 1326, and the court sentenced him to 77 months' imprisonment and three years' supervised release. The warrant for his arrest for violation of the terms of his supervised release for his Dallas conviction was finally executed on October 13, 2006, and shortly thereafter Ramirez's probation officer filed a supplemental petition to revoke supervised release based on his Del Rio conviction in addition to his Missisippi conviction. The Mississippi court also issued another supervised release violator's warrant based on Ramirez's Del Rio conviction.

On November 9, 2006, the Dallas court (the district court from which defendant currently appeals) held a revocation hearing.[1] At the hearing, Ramirez pleaded true to the allegations in the probation officer's petition to revoke his supervised release and asked the court to consider the sentences he had already received for his conduct. The district court noted that the statutory maximum term of imprisonment was 24 months and that the Sentencing Commission policy statement recommended a range of imprisonment of 21 to 24 months. The district court also noted that Ramirez had been deported on three prior occasions and had illegally reentered on at least two prior occasions. It pointed out that Ramirez was already subject to a term of supervised release from the Del Rio court. The court then revoked Ramirez's supervised release, imposed a sentence of 24 months' imprisonment, and stated that it would not impose any additional term of supervised release.[2] Ramirez did not object to his sentence. In its written judgment, the court recommended that Ramirez be incarcerated in a facility where he could undergo treatment for his medical problems. In sum, then, in addition to the 177 months' total imprisonment Ramirez had previously received for his three illegal border crossing convictions, the district court sentenced him to a 24-month revocation sentence based on his breach of the supervised release agreement he entered after the first conviction. Ramirez timely appealed the imposition of the 24-month revocation sentence, challenging its reasonableness.

---

[1] Ramirez's supervised release was originally set to expire in March 2003; however, his release term was tolled during his subsequent periods of imprisonment. See 18 U.S.C. § 3624(e). Thus, Ramirez's release period had not expired by the time the revocation hearing was held.

[2] In addition to the 24-month statutory maximum term of imprisonment, the district court could have imposed a one-year term of supervised release. See 18 U.S.C. § 3583(h).

## II. JURISDICTION AND STANDARD OF REVIEW

This is an appeal of a sentence following revocation of supervised release in a criminal case. This court has jurisdiction under 18 U.S.C. § 3742(a).

Traditionally, we have reviewed revocation sentences to determine whether they are "plainly unreasonable" because they involve no applicable sentencing guidelines. See, e.g., United States v. Gonzalez, 250 F.3d 923, 925 (5th Cir. 2001). However, Ramirez argues that after the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 261 (2005), which established a "reasonableness" standard of review for post-conviction sentences, we must review all sentences, including revocation sentences, under the reasonableness standard. We have not yet decided whether Booker affects the standard we use to review revocation sentences. See, e.g., United States v. Jones, 484 F.3d 783, 791-92 (5th Cir. 2007). However, we need not address the issue to resolve this case. Because Ramirez did not object to the reasonableness of his sentence in the district court, the sentence is subject only to plain error review. United States v. Peltier, 505 F.3d 389, 391 (5th Cir. 2007).[3] Under plain error review, "We may correct the sentencing determination only if (1) there is error (and in light of Booker, an 'unreasonable' sentence equates to a finding of error); (2) it is plain; and (3) it affects substantial rights." Peltier, 505 F.3d at 392. Moreover, the decision to correct the forfeited error is "within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the

---

[3] In Peltier, we rejected the Seventh Circuit's view that a defendant need not object to a sentence as unreasonable after its pronouncement to avoid plain error review. 505 F.3d at 391. We declined to follow the Seventh Circuit's reasoning that such a strict requirement for reasonableness challenges would "'create a trap for unwary defendants and saddle busy district courts with the burden of sitting through an objection–probably formulaic–in every criminal case.'" Id. (quoting United States v. Castro-Juarez, 425 F.3d 430, 433-34 (7th Cir. 2005)). We noted that "the rule requiring objection to error [is] one of the most familiar procedural rubrics in the administration of justice." Id. at 391-92 (internal quotation marks omitted).

error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. (internal quotation marks omitted).

## III. DISCUSSION

Section 3583(e) of Title 18, United States Code, requires a court to consider several of the factors listed in 18 U.S.C. § 3553(a) when it imposes a sentence following revocation of supervised release. The court must consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (3) the need for the sentence imposed to protect the public from further crimes of the defendant; (4) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the kinds of sentence and the sentencing range issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(3); (6) any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2); (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide restitution to any victims of the offense. 18 U.S.C. §§ 3583(e), 3553(a). "Implicit consideration of the § 3553 factors is sufficient." United States v. Teran, 98 F.3d 831, 836 (5th Cir. 1996). The Sentencing Commission has not issued guidelines applicable to revocation sentences; it has instead promulgated only policy statements. U.S. SENTENCING GUIDELINES MANUAL ("USSG") ch. 7, pt. A(1), introductory cmt. (2006).

Ramirez makes three arguments in support of his contention that the district court failed to consider and properly balance the relevant sentencing factors in imposing a 24-month sentence. First, he claims that the district court failed to give sufficient weight to the previous sentences he has received. He notes that when the district court imposed its revocation sentence, the two

reentry offenses that formed the basis of the revocation had already been punished by the Mississippi and Del Rio courts. He also points out that he had already received a total of 197 months' imprisonment for his three illegal border crossings. With this argument, Ramirez fails to recognize that each sentence he received was for a distinct violation. Ramirez's first Dallas sentence, his Mississippi sentence, and his Del Rio sentence were based the three distinct violations of 8 U.S.C. § 1326 he committed by illegally entering the country on three separate occasions.[4] His revocation sentence, however, was based on a separate violation: the breach of trust he committed when he violated the terms of his supervised release imposed by the Dallas court in 1996.

The Sentencing Commission has recognized that "as a breach of trust inherent in the conditions of supervision, the sanction for the violation of trust should be in addition, or consecutive, to any sentence imposed for the new conduct." USSG ch. 7, pt. A(3)(b), introductory cmt.; see also USSG § 7B1.3(f) ("Any term of imprisonment imposed upon the revocation of . . . supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of . . . supervised release."); United States v. Simtob, 485 F.3d 1058, 1063 (9th Cir. 2007) ("The idea behind [the USSG chapter seven] punishment scheme is that the violator should be punished both for breaching the court's trust and for the new criminal conduct, as each act is separately and distinctly offensive."); United States v. Zamora-Vallejo, 470 F.3d 592, 596 n.6 (5th Cir.

---

[4] We reject Ramirez's contention that his three illegal border crossings should be considered together as a single offense. See United States v. Alvarado-Santilano, 434 F.3d 794, 798 (5th Cir. 2005) ("[B]eing found in the United States by immigration officials is sufficient to extinguish a pre-existing and continuing offense arising from prior illegal reentries. Because the initial [8 U.S.C.] § 1326 violation is extinguished, a subsequent reentry gives rise to a separate offense, and neither offense should be considered a part of the other . . . .").

2006) (stating that "while the same conduct might trigger revocation of supervised release and constitute [a new crime], that does not mean it is the same conduct that is being punished in two such sentences"). We have repeatedly upheld revocation sentences that ran consecutively with sentences for the underlying offense leading to the revocation. See, e.g., United States v. Rocha-Ramirez, 243 F. App'x 22, 23 (5th Cir. 2007) (unpublished) (upholding a 12-month revocation sentence to be served in addition to a 27-month sentence for the offense that led to the revocation); United States v. Deal, 237 F. App'x 909, 910-11 (5th Cir. 2007) (unpublished) (upholding a 10-month revocation sentence imposed in addition to a 33-month sentence for the offense underlying the revocation). In light of these Sentencing Commission statements and cases, it was reasonable for the district court to impose a revocation sentence for Ramirez's breach of trust that was in addition to his sentences for the new criminal conduct that constituted the breach of trust. We also note that the district court did consider Ramirez's previous sentences when it noted that Ramirez had already received a term of supervised release from the Del Rio court and decided not to impose any additional term of supervised release. Therefore, the district court did not fail to give adequate weight to Ramirez's previous sentences and thus did not commit any error, much less plain error.

Second, Ramirez argues that the court below erred by effectively overruling the judgment of the Mississippi court, which had all of the relevant facts before it and imposed a sentence of only 77 months. Ramirez contends that because the Mississippi court could have imposed a longer sentence but did not do so, it must have concluded that a longer sentence was unnecessary. Ramirez asserts that the district court should have deferred to that conclusion and imposed no additional sentence. This argument is also unavailing. As discussed above, Ramirez's breach of his supervised release agreement was a distinct offense from his reentry offenses. The Mississippi court may have had before it

all of the facts, but it did not have before it the issue of what punishment was required for the breach of the supervised release agreement. There was no need for the district court to defer to the conclusion of another court that was addressing a different issue.[5] Thus, its decision not to do so was reasonable and did not constitute error or plain error.

Third, Ramirez argues that the district court erred by failing to consider the unfairness of the government's failure to execute the revocation warrant prior to Ramirez's deportation. Ramirez claims that had the warrant been executed in a timely fashion instead of being "saved up" until after Ramirez had committed another violation, his revocation sentence might have been shorter because the district court would have had only one supervised release violation to consider in imposing its revocation sentence. Ramirez also cites United States v. Tyler, 605 F.2d 851, 853 (5th Cir. 1979), for the proposition that it is fundamentally unfair to a defendant to withhold allegations that would justify revocation.

This argument fails as well. Ramirez's reliance on Tyler is misplaced. In Tyler, we held that a defendant's due process rights were violated when a probation officer filed a revocation petition based on one offense but deliberately withheld several previous convictions from the petition, then brought a second revocation petition based on the earlier convictions after the first revocation

---

[5] Ramirez cites United States v. Danser, 270 F.3d 451, 455 (7th Cir. 2001), in support of his argument that the court below should have deferred to the conclusion of the Mississippi court that 77 months was a sufficient sentence. Danser is inapposite. In Danser, a district court sentenced Danser to 370 months' imprisonment and three consecutive three-year supervised release terms. Id. at 453. On appeal, the Seventh Circuit found that the district court had erred in making the supervised release terms consecutive. Id. at 454. It rejected the government's request to remand the case so the district court could consider whether to impose a longer term of imprisonment, reasoning that "[t]he district court could have sentenced Danser to additional prison time, but chose not to do so . . . ." Id. Unlike Danser, which involved a proposed resentencing by the same court for the same offense, Ramirez's case involves a second sentence by a different court for a different offense—the breach of the supervised release agreement.

petition had failed. Id. We found that the "lengthy delay, coupled with the probation officer's obvious decision not to file these charges in the first petition, [was] fundamentally unfair." Id. In a later case, we noted that the fundamental unfairness determination in Tyler "was based in large part on the probation officer's failure to include all known violations in the first motion to revoke, raising them only after the outcome of the first proceeding failed to satisfy him." Jones v. Johnson, 230 F.3d 825, 827 (5th Cir. 2000). In Ramirez's case, in contrast, the probation officer did not withhold any known violations in any revocation petition in an attempt to obtain multiple opportunities to revoke Ramirez's sentence, nor did he file a petition in the absence of any new violations. The probation officer included all of the information he had in the initial revocation petition and supplemented the petition with additional new violations as they occurred. Rather than being unfair to Ramirez, the fact that the revocation warrant was not executed earlier gave Ramirez a chance to avoid punishment for his first violation of the supervised release agreement, a chance he forfeited when he again illegally entered the United States.

Moreover, even assuming arguendo that the district court erred by not considering the delay in the execution of the warrant, Ramirez has not satisfied the other prongs of the plain error test for this alleged error. For an error to be plain, it must be "obvious." United States v. Olano, 507 U.S. 725, 734 (1993). Because Ramirez points to no cases or other sources of law directly supporting his argument and because consideration of this issue would have affected neither the statutory maximum nor the policy statement's recommended range, the alleged error was not clear or obvious. In addition, Ramirez has not shown that the alleged error affected his substantial rights. Although it is possible that the district court based its decision to sentence Ramirez at the top of the range in part on the fact that Ramirez had committed two release violations instead of one, the record does not reveal whether that is the case. Because Ramirez has

not shown "a reasonable probability that, but for the district court's misapplication of the [sentencing factors], he would have received a lesser sentence," United States v. Villegas, 404 F.3d 355, 364 (5th Cir. 2005), he has not shown that his substantial rights were affected.

In sum, the record indicates that Ramirez's sentence was reasonable and that the district court properly considered the relevant sentencing factors in imposing sentence. The court explicitly mentioned that the policy statement range was 21-24 months and imposed a sentence within that range. The court also stated that Ramirez had been deported on three prior occasions and had illegally reentered on at least two prior occasions, showing that it considered the defendant's history and characteristics and the need to protect the public from future crimes. It also mentioned that regardless of the sentence it imposed, the defendant would be subject to supervised release as part of the Del Rio case, and it decided not to impose a term of supervised release; this shows that the district court did consider Ramirez's previous sentences. Finally, in its written judgment, the court recommended that Ramirez be placed in a facility where he could receive medical care, demonstrating that it considered the need for the sentence imposed to provide for Ramirez's medical requirements. None of Ramirez's arguments establish that the sentence was unreasonable or that the district court committed error or plain error.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.