[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 11, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12210
Non-Argument Calendar

_____

D. C. Docket No. 91-00175-CR-J-20-HTS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELLIS E. NEDER, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(March 11, 2008)**

Before BIRCH, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Ellis E. Neder, Jr. appeals the revocation of his supervised release

pursuant to 18 U.S.C. § 3583(e)(3) and his resulting sentence of nine months' imprisonment and four years and three months of supervised release. After review, we affirm.

## I. BACKGROUND

In 1992, Neder, an attorney, was convicted on 73 counts connected to his real estate development, including, inter alia, bank fraud, mail fraud, wire fraud and conspiracy to defraud a financial institution. See United States v. Neder, 197 F.3d 1122, 1124-27 (11th Cir. 1999) (discussing Neder's underlying convictions involving over $25 million in fraud in fraudulent real estate deals). Neder was sentenced to twelve years and three months' imprisonment, five years' supervised release and restitution in the amount of $25,045,996.

As conditions of supervision, Neder was (1) forbidden to associate with a convicted felon; (2) ordered to pay the court-ordered restitution upon his release; (3) prohibited from incurring new credit charges, opening new lines of credit or making major purchases without approval from the Probation Office unless he was in compliance with the payment schedule; (4) ordered to provide the Probation Office with requested financial information; and (5) prohibited from engaging in employment relating to real estate development. Neder's supervised release began

2

on October 11, 2001, and was scheduled to end on October 11, 2006.

On August 2, 2006, the Probation Office filed a petition for a warrant alleging that Neder had violated his supervised release by failing to make restitution payments to the best of his ability or to make restitution in full ("Charge 1") and by obtaining new credit without prior approval ("Charge 2"). After an arrest warrant was issued, the district court appointed counsel for Neder and set the revocation hearing for September 19, 2006. The hearing was continued four times, three of which were at Neder's request.

On October 6, 2006, the Probation Office filed a superseding petition that added charges that Neder had associated with a known convicted felon named William Lilly ("Charge 3") and had been involved in an attempted real estate transaction ("Charge 4").

On December 7, 2006, the Probation Office filed an amended petition that dropped Charge 2, while retaining Charges 1, 3 and 4, and included new charges that Neder had associated with a known convicted felon named Herb Gutpelet ("Charge 5") and had engaged in employment related to real estate development involving San Marco Properties ("Charge 6").[1]

---

[1]Testimony at the revocation hearing established that Charge 5 involved Neder's conduct in 2002 and 2003 and that Charge 6 involved Neder's conduct in March 2004. However, the probation officer did not learn of the conduct until October 2006.

On March 28, 2007, the district court held a revocation hearing at which witnesses testified. At the end of the testimony, the district court continued the hearing to April 24 for closing arguments.

On April 17, 2007, the Probation Office filed a second amended petition that added a new count charging Neder with engaging in employment related to real estate development when, in January 2007, he contacted Charles Pickard to solicit his contribution to a country club investment ("Charge 7"). The government also moved to re-open the evidence for two additional witnesses. The district court granted the government's motion to re-open and held a second hearing on April 24 and 30, 2007. Over the course of the revocation hearings, the district court heard testimony from eight witnesses and received numerous exhibits.

During the proceedings, Neder filed two motions to dismiss arguing that the district court lacked jurisdiction over Charges 5, 6 and 7. The district court denied Neder's motions.

On May 3, 2007, the district court found that Neder had committed the violations in Charges 1, 3, 4, 5, 6 and 7 and revoked Neder's supervised release. The district court found that Grade C was the highest violation, that Neder's original criminal history category was I, and that the guidelines range was three to nine months' imprisonment. After considering the advisory guidelines range and

4

the factors in 18 U.S.C. § 3553(a), the district court sentenced Neder to nine months' imprisonment, followed by four years and three months of supervised release. The district court ordered Neder to make monthly minimum restitution payments of $1,000, subject to change upon application by Neder or the government. Neder filed this appeal.

## II. DISCUSSION

### A. District Court's Jurisdiction

The original petition to revoke (Charge 1) and the superceding petition (Charges 3 and 4) were filed before Neder's supervised release term was scheduled to expire on October 11, 2006. Thus, as a threshold issue, we conclude that the district court had jurisdiction to revoke Neder's supervised release on May 3, 2007 based on Charges 1, 3 and 4 filed before October 11, 2006. See United States v. Bailey, 259 F.3d 1216, 1219 (10th Cir. 2001) (concluding that a district court has jurisdiction to revoke a term of supervised release for a reasonable time after the term expired if a summons was issued during the term); United States v. Jimenez-Martinez, 179 F.3d 980, 981-82 (5th Cir. 1999) (same); United States v. Morales, 45 F.3d 693, 696-97 (2d Cir. 1995) (same); United States v. Barton, 26 F.3d 490, 491-92 (4th Cir. 1994) (same); United States v. Neville, 985 F.2d 992, 995-99 (9th Cir. 1993) (same). Several circuits point out that immediate revocation of

supervised release would raise due process concerns. <u>Barton</u>, 26 F.3d at 492; <u>Neville</u>, 985 F.2d at 996-97. "[I]n order to assure that late-term violators may have their release revoked while ensuring that they receive adequate due process, the district court's jurisdiction must extend past the end of the supervisory term." <u>Barton</u>, 26 F.3d at 492.[2]

Further, any single Grade C violation can be the basis for revoking a term of supervised release and imposing a term of imprisonment. <u>See</u> U.S.S.G. §§ 7B1.3(a)(2) (permitting revocation "[u]pon a finding of a Grade C violation . . . ."), 7B1.4(a) (setting out a range of imprisonment applicable upon revocation). Charges 1, 3 and 4, each of which is a Grade C violation, <u>see</u> U.S.S.G. § 7B1.1(a)(3)(B), therefore provide a sufficient basis for revocation and the imposition of a sentence. Thus, we need not address the district court's jurisdiction over Charges 5, 6 and 7. <u>See</u> <u>United States v. Brown</u>, 656 F.2d 1204, 1207 (5th Cir. Sept. 1981) (providing that an appellate court need not address

---

[2]In September 1994, after Neder was convicted, Congress enacted subsection (i) of § 3583 which now expressly states that the district court's jurisdiction to revoke a term of supervised release "extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such violation." 18 U.S.C. § 3583(i). We need not address the retroactivity of § 3583(i) because, like every other circuit to address this question, we conclude that, even before enactment of § 3583(i), district courts retained jurisdiction to revoke supervised release for a reasonable time after the scheduled end of the supervised release term if the revocation proceedings were initiated within the supervised release term.

additional claims of error when the district court had an adequate basis for its discretionary action).[3]

## B.    Charges 3 and 4 Relating to Beauclerc Bay Apartments[4]

Further, there was ample evidence to support the district court's findings that Neder associated with Lilly, a convicted felon (Charge 3), and engaged in employment relating to real estate development (Charge 4).  We review some of the evidence.

After release from prison, Neder found contract work as a paralegal for various attorneys, including Mark Tippins.  Neder would search for and help set up real estate deals that could be closed at Tippins's firm.  One witness referred to Neder's role as "bird-dogging" business for Tippins.  More specifically, Neder would locate real estate for sale, bring it to the attention of prospective buyers and then act as a conduit between the prospective buyer and seller during negotiations.  Once a "handshake deal" was in place, attorney Tippins would step in to conduct

---

[3]This Circuit has adopted as binding precedent all decisions of the former Fifth Circuit handed down on or before September 30, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[4]We review a district court's revocation of supervised release for an abuse of discretion. United States v. Frazier, 26 F.3d 110, 112 (11th Cir. 1994).  The district court's findings of fact with regard to violations of supervised release are binding unless clearly erroneous.  United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993).

the closing. Neder would then perform the paralegal work on the closing.[5]

In 2003, Neder, as part of his "bird-dogging" efforts, approached Bill Lilly, a convicted felon whom Neder had met in prison. Lilly's girlfriend, Valerie Kaan, was a real estate developer. Both Lilly and Kaan were involved with J.W. Macara, Inc., a real estate development company, and were looking for properties to convert to condominiums.[6] When Neder found property for sale with potential for condominium development, Neder would bring it to Lilly and Kaan's attention.

On behalf of Lilly, Kaan and J.W. Macara, Inc., Neder met with real estate agent Kelly Lawhon four or five times looking for potential property. Lawhon gave Neder information about the Beauclerc Bay Apartments, which the owner, Jack Keiser, was offering for sale.[7] Neder met with Mel Bryan, the owner of a construction business, approximately three times to obtain an estimate to convert the 106 units to condominiums. Neder also introduced Bryan to Bill Lilly, who was acting as the principal for J.W. Macara, Inc.

---

[5]Although Neder was not paid the proceeds of the real estate deal, Neder was paid for his paralegal services relating to the real estate deal. In the case of condominium conversions, Neder would perform paralegal services on both the sale of the apartments to the developer and the closing for each individual condominium unit once it was converted.

[6]Upon his release from prison, Neder initially asked the Probation Office if he could reside with Kaan. Because Kaan was a real estate developer who lived with Bill Lilly, a convicted felon, Neder's request was denied.

[7]In a follow-up meeting, Neder informed Lawhon that he had negotiated a contract on Beauclerc Bay Apartments. A dispute arose between Lawhon and Neder about Lawhon's commission. Neder negotiated a settlement, which was paid by J.W. Macara, Inc.

Also on behalf of J.W. Macara, Inc., Neder met twice with Keiser's attorney and once with Keiser's accountant to negotiate the terms of the sale of Beauclerc Bay Apartments. According to Neder, J.W. Macara, Inc., planned to convert the apartments to condominiums after the sale to the Blue Water Bay Condominiums. The contract between Keiser and J.W. Macara, Inc. was signed in March 2003, although the deal eventually fell through after a dispute arose about the legal description of the property.

J.W. Macara, Inc. filed a lawsuit against Keiser over the Beauclerc Bay Apartments deal. During a deposition in this civil suit, Neder testified that he was involved in the formation of Blue Water Bay Condominiums, Inc., which was set up to develop a piece of property. Neder admitted that he contacted Lilly and Kaan about the Beauclerc Bay property because he knew they were interested in condominium conversions. Lilly and Kaan expressed interest in the Beauclerc Bay property, and Lilly came to Jacksonville to meet with Neder and Keiser to inspect the property. Neder sent draft contracts to Lilly and Kaan, which he prepared in his capacity as a paralegal.

In summary, the evidence indicates that Neder was actively associating with Lilly and seeking to bring about a real estate development deal for the Beauclerc Bay Apartments. For example, Neder contacted Lilly and Kaan because he knew

9

they were involved in condominium conversions and were interested in buying properties in the Jacksonville area. After Neder made contact with Lilly, Lilly traveled to Jacksonville and met with Neder and Keiser to examine the Beauclerc Bay Apartments. Neder then facilitated a handshake deal between Lilly's company, J.W. Macara, Inc., and Keiser.

The condition prohibiting Neder from engaging in employment "related to real estate development" does not merely restrict Neder from being a developer or benefitting financially in a real estate development deal. Neder's employment need only "relate to" real estate development. Furthermore, Neder's attempt to cast himself as a mere paralegal working on a real estate closing is unpersuasive. In addition to performing typical paralegal tasks, such as drafting closing documents, Neder also actively generated his paralegal work by searching for real estate with development potential, bringing it to the attention of a prospective developer, and facilitating a deal between the seller and the prospective developer.

In the case of the Beauclerc Bay property, Neder's activities included: meeting with a real estate agent to scout prospective properties, including Beauclerc Bay; obtaining an estimate from a construction company as to the cost of a condominium conversion; and meeting with the seller's accountant and attorney to iron out the final terms of the handshake deal. There is also evidence

10

that Neder was involved in the formation of Blue Water Bay Condominiums, Inc., which was set up to develop that piece of property. Neder has shown no reversible error in the district court's finding that he committed the violations in Charges 3 and 4.

## C.    Charge 1 for Failure to Pay Restitution

We also reject Neder's claims that the district court erred in finding that he failed to pay adequate restitution.

Neder's sentence ordered him to pay $25,045,996 in restitution. Neder paid a total of $8,680 in restitution during the five-year supervision period from October 2001 to October 2006.

In December 2005, Neder was assigned a new probation officer, Ron West. Neder's outgoing probation officer advised West that Neder might be able to make larger monthly payments. West conducted a financial investigation and learned that, over the course of the supervision period, Neder's income had exceeded his expenses by approximately $45,000.

In June 2006, West and his supervisor met with Neder to discuss the excess income of $45,000 and took the position that Neder should have been paying more restitution. Neder offered to pay $33,900 by July 31, 2006 to ensure that his supervision would terminate as scheduled in October 2006.

West contacted the district court, which agreed to wait until July 31, 2006 to permit Neder to pay the additional sum. Although Neder continued to make his monthly $300 payments, he did not pay the additional $33,900 by July 31. As a result, West included Charge 1 in the initial petition, alleging that Neder failed to make restitution payments "to the best of his ability" and failed to pay restitution in full. After hearing West's testimony and reviewing a summary of Neder's income, expenses and payment history, the district court concluded that Neder had not made a "good faith attempt to comply with the restitution order."

We conclude that Neder has shown no reversible error in the district court's determination. Although Neder complied with payment schedules agreed upon with the Probation Office, the financial evidence at the revocation hearing showed that he clearly had the ability to pay much more given his income. When the Probation Office confronted Neder with this fact and Neder was faced with the possibility of revocation of his supervised release, Neder offered to pay $33,900 by July 31, 2006. However, Neder did not make this payment or any portion of it by the agreed upon date (or afterward). Given Neder's income shown in the record and his unexplained failure to make the agreed upon lump sum payment by July 31, 2006, especially when his supervision period was set to expire in less than

12

three months, we cannot say the district court erred.[8]

## D.  Due Process

Neder argues that he was denied due process during the revocation proceedings.  Citing United States v. Tyler, 605 F.2d 851, 853 (5th Cir. 1979), Neder argues that the Probation Office's failure to notify him earlier that his restitution payments were inadequate or that he might have to pay a lump sum at the end of his supervised release term was fundamentally unfair.

Tyler involved a probation officer's holding back of known violations in preparing a first probation revocation petition and, when that petition failed, filing a second petition containing the withheld violations.  605 F.2d 851, 852 (5th Cir. 1979).  This Court concluded that the "lengthy delay, coupled with the probation officer's obvious decision not to file these charges in the first petition, [was] fundamentally unfair."  Id. at 853.

After Tyler, we held that "a revocation of probation based on a series of violations punctuating the probationary period is, without more, constitutional."  United States v. Rice, 671 F.2d 455, 458 (11th Cir. 1982).  In Rice, the probation officer listed in the petition violations dating back two and a half years.  Id.  Noting that it was "a building block case," we rejected the defendant's argument that a

---

[8]Alternatively, we conclude that Charges 3 and 4 were adequate to support the district court's revocation.

13

probation officer must file a petition for revocation upon the first violation of probation. Id. (quotation marks omitted)

In Neder's case, probation officer West did not withhold any known violations from a first petition and then allege them in a second petition. The original petition filed by West alleged that Neder had failed to pay restitution to the best of his ability. Thus, Tyler is inapposite.

Furthermore, West and his supervisor met with Neder before the petition was filed and raised their concerns about Neder's failure to pay more restitution when he had excess income. In response, Neder offered to pay $33,900 by July 31, 2006. It was only after Neder failed to make good on his own offer that West filed the petition. Under these circumstances, West's treatment of Neder did not result in a denial of due process.[9]

**E. Neder's Sentence**

Neder argues that the district court's sentence of nine months' imprisonment followed by four years and three months of supervised release is unreasonable and violated his Eighth Amendment rights.

Upon finding that a defendant has violated a condition of supervised release, a district court may revoke the term of supervised release and impose a term of

---

[9]Neder's other due process arguments, which were not raised in the district court, are without merit.

14

imprisonment after considering the factors in § 3553(a). We review a defendant's

sentence imposed upon revocation of supervised release for reasonableness.

United States v. Sweeting, 437 F.3d 1105, 1106-07 (11th Cir. 2006). The §

3553(a) factors include (1) the defendant's history and characteristics, (2) the need

to promote respect for the law and provide just punishment, (3) the need for

deterrence, (4) protection of the public and (5) the need to provide restitution to the

victims. See 18 U.S.C. § 3553(a).

The district court must also consider the advisory policy statements in

Chapter 7 of the Sentencing Guidelines, one of which provides recommended

ranges of imprisonment. United States v. Brown, 224 F.3d 1237, 1242 (11th Cir.

2000). Neder's recommended guidelines range was three to nine months'

imprisonment. See U.S.S.G. § 7B1.4(a).[10] Stating that it had considered the §

3553(a) factors, the district court imposed a nine-month sentence.

Neder contends that the nine-month prison term and the lengthy term of

supervised release are unwarranted because he did not break any laws or engage in

criminal behavior. These facts do not show that the sentence was unreasonable.

The district court expressly found that Neder's conduct in violating the terms of

supervised release was not criminal. However, Neder's conduct of soliciting a

---

[10]Neder does not challenge the district court's calculation of the advisory guidelines
range.

known convicted felon to assist the felon's development company in purchasing real estate for a condominium conversion was serious in light of Neder's underlying offenses of fraud relating to real estate development. As the district court stated, Neder was doing "what the court was trying to keep him from doing, because of the convictions that he had and the Court knowing how he went about with the convictions." The district court also expressed concern about the ability to trust Neder once he completed his nine-month sentence and whether Neder was "supervisable."

In addition, the record shows that the district court considered Neder's age and poor health, his contention that he got "carried away" while engaging in his paralegal duties and did not intend to violate the terms of his supervised release, and the effect of imprisonment on Neder's future ability to pay restitution. On this record, Neder has not shown that the district court's sentence was unreasonable or violated the Eighth Amendment.[11]

### III. CONCLUSION

---

[11]Neder also argues that the district court's order that he pay $1,000 a month in restitution upon his release is unreasonable because it will be impossible for him to comply. Neder's challenge to the district court's restitution order is premature. Whether it will be impossible for Neder to comply with the district court's restitution payment schedule can be determined only after Neder is released from prison. Furthermore, as the district court noted during the revocation hearing, Neder can move the district court to modify the restitution schedule if, after Neder is released, he is unable to obtain employment sufficient to make the monthly payments. See 18 U.S.C. § 3583(e)(2).

For all the forgoing reasons, we affirm the district court's revocation of Neder's supervised release and the imposition of a sentence of nine months' imprisonment, followed by four years and three months of supervised release.

**AFFIRMED.**