**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**
January 9, 2020

Lyle W. Cayce
Clerk

No. 18-50962

———————

Consolidated with 18-50963

UNITED STATES OF AMERICA,

     Plaintiff – Appellee

v.

LARRY WESLEY BROWN,

     Defendant – Appellant

———————

Appeals from the United States District Court
for the Western District of Texas
USDC No. 7:07-CR-145-1
USDC No. 7:18-CR-53-1

———————

Before HAYNES and OLDHAM, Circuit Judges, and HANEN,* District Judge.

PER CURIAM:**

     These consolidated appeals address the supervised release revocation and the firearm possession sentencing of Larry Wesley Brown. We AFFIRM.

---

* District Judge of the Southern District of Texas, sitting by designation.

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50962 c/w No. 18-50963

## I.     Background

In 2008, Brown pleaded guilty to being a felon in possession of a firearm. The district court sentenced him to fifty-two months of imprisonment and a three-year term of supervised release. He was released to supervision in March 2016.

Less than two years later, the probation office filed a petition for a warrant for Brown, alleging that he had violated the terms of his supervised release.[1] The petition stated that Brown had been arrested for a Texas offense but failed to advise his probation officer as required. When officers arrested Brown at his home for a state parole violation, they discovered a loaded firearm, three extra magazines, heroin, cocaine, and methamphetamine there.

Brown was thereafter charged in federal court with possessing a firearm after a felony conviction. He pleaded guilty to the offense without a written plea agreement.

A probation officer then filed an amended petition to revoke Brown's probation. In addition to restating Brown's previous violations, the amended petition noted that Brown had been convicted on the felon-in-possession charge. The probation officer later filed a second amended petition alleging that Brown had also been indicted in federal court for bank robbery. The Government adopted the petition's allegations and moved to revoke Brown's supervised release.

At a joint hearing to adjudicate the Government's revocation petition and sentence Brown for the felon-in-possession conviction, Brown pleaded true to each allegation in the second amended petition. The district court granted the

---

[1] In particular, the petition asserted that Brown had violated the terms that (1) prohibited him from committing a new law violation, (2) obligated him to inform his probation officer within seventy-two hours of being arrested or questioned by officers, and (3) barred him from living in a place where firearms were possessed or stored.

Government's motion for revocation, revoked Brown's supervised release, and sentenced him to twenty-four months in prison and no term of supervised release.  As to the felon-in-possession offense, the district court sentenced Brown to seventy-one months of imprisonment and a three-year term of supervised release.   The district court ordered the sentences to run consecutively.  Brown timely appealed both the revocation and the felon-in-possession judgments.

## II.    Discussion

### A. The Revocation Sentence

Brown raises several challenges to his revocation and accompanying sentence.  He did not raise any of these arguments in the district court, so we apply plain error review.  *See Puckett v. United States*, 556 U.S. 129, 134–35 (2009).  To establish plain error, Brown must show that (1) there was an error, (2) the error was "clear or obvious," and (3) the error "affected [his] substantial rights."  *Puckett*, 556 U.S. at 135.  If Brown makes that showing, we have discretion to remedy the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."   *Id.* (alteration in original) (internal quotation marks and citation omitted).

Brown first contends that he did not knowingly and voluntarily plead true to the allegations in the revocation petition.  He asserts that the parties and the district court were uncertain about the allegations to which he admitted and that the confusion prevented him from entering an informed plea.  He maintains that as a result of this confusion and the district court's failure to assess whether his plea was entered intelligently, his due process rights were violated.

Brown relies upon *Boykin v. Alabama*, 395 U.S. 238, 242–44 (1969), requiring a knowing and voluntary plea, contending it applies to revocation

proceedings. We have not previously decided this issue, and we need not do so here. *See United States v. Johns*, 625 F.2d 1175, 1176 (5th Cir. 1980) (declining to decide whether *Boykin* applies to revocation proceedings); *see also United States v. Botello*, 769 F. App'x 147, 148 (5th Cir. 2019) (per curiam), *cert. denied*, 140 S. Ct. 298 (2019) (mem.). Several of our sister circuits have held that *Boykin* does not apply to revocation proceedings,[2] and an error is not clear or obvious when our law is unsettled and other circuit courts have reached different results on the issue, *see United States v. Salinas*, 480 F.3d 750, 759 (5th Cir. 2007). Thus, even if the district court did not expressly assess whether Brown's plea was knowing and voluntary, such failure would not be plain error.

Brown also argues a lack of knowing and intelligent waiver of his right to a full revocation hearing. *See United States v. Hodges*, 460 F.3d 646, 651–52 (5th Cir. 2006). As discussed above, at the joint revocation and sentencing (for the felon-in-possession charge) hearing, Brown pleaded true to the relevant allegations, thus waiving his right to a full hearing on the merits. Assuming arguendo that the district court failed in some procedural aspects of this waiver process, Brown has not shown that any error affected his substantial rights. *See Puckett*, 556 U.S. at 135. Specifically, Brown has not established a reasonable probability that, but for the error, he would not have admitted to the violations in the second revocation petition. *See id.*; *see also United States v. Dominguez-Benitez*, 542 U.S. 74, 83 (2004). He has thus not shown reversible plain error. *See Puckett*, 556 U.S. at 135.

Brown next asserts that his revocation sentence was unreasonable. We review revocation sentences under the "plainly unreasonable" standard of

---

[2] *See, e.g.*, *United States v. Pelensky*, 129 F.3d 63, 67–68 (2d Cir. 1997); *United States v. Rapert*, 813 F.2d 182, 184–85 (8th Cir. 1987); *United States v. Segal*, 549 F.2d 1293, 1296–1301 (9th Cir. 1977).

18 U.S.C. § 3742(a). *See United States v. Miller*, 634 F.3d 841, 843 (5th Cir. 2011). We will uphold a revocation sentence unless it is "in violation of the law or plainly unreasonable." *United States v. Jones*, 484 F.3d 783, 791 (5th Cir. 2007) (citation and internal quotation marks omitted). Under our precedent, because Brown did not challenge the reasonableness of his sentence in district court, we would review for plain error only. *See United States v. Gonzalez*, 250 F.3d 923, 930 (5th Cir. 2001).[3] Under either standard, however, Brown's arguments fail.

At the time of sentencing, a district court "shall state in open court the reasons for its imposition the particular sentence." 18 U.S.C. § 3553(c). "The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." *Rita v. United States*, 551 U.S. 338, 356 (2007); *see United States v. Whitelaw*, 580 F.3d 256, 261–62 (5th Cir. 2009) (applying *Rita* in the revocation context).

Brown argues that his sentence was unreasonable because the district court did not explain its decision to order his revocation and felon-in-possession sentences to be served consecutively. We agree that the district court could have given a more robust explanation. But, even applying the preserved-error "plainly unreasonable" standard, we conclude that reversible error is not shown particularly given that the court followed the sentencing policy recommendation of a consecutive sentence. U.S.S.G. § 7B1.3(f), p.s. ("Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, . . . .").

---

[3] The Supreme Court has granted certiorari in a case challenging our precedent on this point. *Holguin-Hernandez v. United States*, 139 S. Ct. 2666 (2019) (mem.). However, even applying the "plainly unreasonable" standard applicable to preserved challenges, we find no reversible error.

Brown also claims that his revocation sentence was unreasonable because he in effect received consecutive sentences for the same conduct. Put differently, Brown contends that he was sentenced both for committing the felon-in-possession offense and for violating his supervised release on that basis. But a revocation sentence is meant to punish the violation of supervised release; this punishment is distinct from the sentence for the new offense that may trigger the revocation. *See United States v. Zamora-Vallejo*, 470 F.3d 592, 596 & n.6 (5th Cir. 2006) (per curiam). We have repeatedly upheld revocation sentences that were ordered to run consecutively to sentences for new offenses that prompted the revocation.[4] Brown has not shown that the district court committed reversible error.

### B. The Felon-In-Possession Sentence

Brown also contends that the district court erred by increasing his sentence under U.S.S.G. § 2K2.1(b)(6)(B) on the ground that he possessed a firearm in connection with another felony offense. We review the district court's application of the Sentencing Guidelines de novo and its findings of fact for clear error. *See United States v. Stanford*, 823 F.3d 814, 843 (5th Cir. 2016).

Section 2K2.1(b)(6)(B) of the U.S. Sentencing Guidelines provides for a four-level enhancement when "the defendant used or possessed any firearm . . . in connection with another felony offense." The enhancement applies if the firearm "facilitated, or had the potential of facilitating, another felony offense." *Id.* § 2K2.1 cmt. n.14(A). "Another felony offense" means any federal, state, or local crime that is punishable by a prison term of more than

---

[4] *See United States v. Sims*, 774 F. App'x 231, 231–32 (5th Cir. 2019) (per curiam); *United States v. Ramirez*, 264 F. App'x 454, 458–59 (5th Cir. 2008) (per curiam); *United States v. Rocha-Ramirez*, 243 F. App'x 22, 23 (5th Cir. 2007) (per curiam); *United States v. Deal*, 237 F. App'x. 909, 910–11 (5th Cir. 2007) (per curiam).

one year, even if the defendant was never charged or convicted. *Id.* § 2K2.1 cmt. n.14(C).

Application of the enhancement depends on the type of felony alleged. If the crime is a drug trafficking offense, the adjustment automatically applies if a firearm is found "in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." *United States v. Jeffries*, 587 F.3d 690, 692 (5th Cir. 2009); U.S.S.G. § 2K2.1 cmt. n.14(B)(ii). For all other felonies except burglary, the enhancement applies if the gun facilitated, or had the potential to facilitate, another felony offense. *Jeffries,* 587 F.3d at 692; U.S.S.G. § 2K2.1 cmt. n.14(A). The evaluation of the connection between the gun and the additional felony is a factual finding that we review for clear error. *See United States v. Coleman*, 609 F.3d 699, 708 (5th Cir. 2010).

Addressing the drug trafficking issue, here, the presentence report ("PSR") stated that when officers arrested Brown, they found a plastic bag containing twelve smaller bags filled with 5.1 total grams of cocaine. Brown told the officers where to find the firearm at issue. The officers found the loaded firearm in a toolbox between a bed and a nightstand; the toolbox also contained three fully loaded magazines. The officers also found additional ammunition; a gun holster; a digital scale; and a safe that contained prescription drugs, roughly one gram of heroin, and less than one gram of methamphetamine. Brown conceded that he owned the drugs and firearm and told the officers that there were also used syringes in a kitchen cabinet.

In addressing the § 2K2.1(b)(6)(B) enhancement, the probation officer referred to Note 14(B) of the Guidelines, which states that the enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." *See* U.S.S.G. § 2K2.1 cmt. n.14(B)(ii). Brown objected to the

enhancement, arguing that there was no indication that the gun was used in connection with another offense and the evidence did not reflect that the gun was related to the drugs in his home.  At sentencing, the district court overruled Brown's objection to the adjustment and adopted the PSR in relevant part without change.

Brown now argues that the § 2K2.1(b)(6)(B) adjustment was improperly applied because there was no record evidence that his possession of the firearm facilitated a drug trafficking offense.  He maintains that the evidence at most showed that he simultaneously possessed a firearm and drugs for personal use.

We disagree.  Brown had 5.1 grams of cocaine divided into small plastic bags, a digital scale, used syringes, roughly one gram of heroin, and less than one gram of methamphetamine in his home.  Moreover, Brown's home was relatively small, so he could readily access the firearm in his bedroom.  Based on these facts, it is plausible that Brown had engaged in drug trafficking—and it is inarguable that the gun was in close proximity to Brown's drugs and related paraphernalia.  The district court's findings supporting the enhancement were not clearly erroneous.  *See Coleman*, 609 F.3d at 708.  The § 2K2.1(b)(6)(B) enhancement was thus proper.  *See* U.S.S.G. § 2K2.1 cmt. n.14(B).

## III.    Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment.